## PECOS & N. T. RY. CO. v. JARMAN & ARNETT.

(Court of Civil Appeals of Texas. San Antonio. June 14, 1911. Rehearing Denied July 1, 1911.)

1. EVIDENCE (§ 47*) — JUDICIAL NOTICE — TRANSPORTATION OF CATTLE — AGRICULTURAL REGULATIONS.

Since courts will take judicial notice of the regulations of the department of agriculture as to the transportation of cattle, and a proclamation of the Secretary of Agriculture putting such regulations in force, it was not error, in an action against a carrier for alleged default in carrying such regulations into effect, to introduce in evidence a pamphlet issued by the government purporting to contain such regulations.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 69; Dec. Dig. § 47.*]

2. CARRIERS (§ 208*) — TRANSPORTATION OF CATTLE—INSPECTION CERTIFICATE—DUTY OF CARRIER.

Where plaintiff's cattle were inspected before shipment and a certificate of good health issued by a United States inspector which would have entitled the cattle to be sent North and sold for feeders at a higher price as intended, it was the carrier's duty to have the inspection certificate required by the regulations of the agricultural department accompany the shipment to destination with the proper bill of lading.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 208.*]

3. APPEAL AND ERROR (§ 1067*) — INSTRUCTIONS—PREJUDICE.

Where the court specially informed the jury of each of the acts of negligence complained of and supported by evidence, and directed them that if they found such negligence to find the damage sustained from the same, stating in case of the carrier's negligent delay of plaintiff's cattle such damage to be the decline in values caused thereby, and in the case of negligence in failing to have the health certificate accompany the shipment, and in consequence thereof the cattle were unloaded at destination in pens set apart for infected cattle, and thereby plaintiff sustained loss, to find for him the amount of such loss, defendant was not prejudiced by refusal of an instruction that though the jury might find that the cattle were damaged they could not consider any damage except such as resulted proximately from defendant's acts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

4. CARRIERS (§ 229*) — TRANSPORTATION OF CATTLE—DELAY—DAMAGES.

In an action for delay in transporting cattle, damage accruing from the necessary unloading of the cattle for food, water, and rest in transit, unless the cattle were held at the unloading pens for an unreasonable length of time, under the circumstances of the shipment, is not to be considered, it being the carrier's duty to hold the cattle in the pens for a period of not

less than five hours exclusive of the time required for unloading and reloading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by Jarman & Arnett against the Pecos & Northern Texas Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Terry, Cavin & Mills, Madden, Trulove & Kimbrough, and Carl Gilliland, for appellant. Knight & Slaton, for appellees.

JAMES, C. J. The petition of Jarman & Arnett alleged that about August 20, 1908, they had 335 head of cattle to ship to Kansas City for sale there, on which date said cattle were being driven to Plainview, Tex., for shipment over defendant's road, plaintiffs having previously requested defendant's local agent on or about August 1, 1908, to have the requested number of cars and whether to ship same on August 22d; that plaintiffs arrived at Plainview with the cattle on August 22d, and were ready to load and ship same, but defendant failed and refused to accept and permit them to be loaded on that date, in consequence of which plaintiffs had to drive the cattle back to a pasture where they were held until the 23d, when they were driven back to Plainview and loaded on the cars, that thereby the cattle were caused to shrink in weight 20 pounds per head.

That said cattle were, at Plainview, inspected by a United States inspector for an interstate shipment under the acts of Congress and the quarantine regulations presented by the proper authority, and a certificate of the healthy condition of said cattle was furnished by said inspector to the defendant as was required by law, which certificate would have entitled the cattle to be placed in what is known as the "native pens" at Kansas City, Mo., where they could and would have been sold as stockers and feeders, and been entitled to be taken into various Northern states for the purpose of being fed and developed, and that defendant negligently and without fault of plaintiffs failed and refused to procure for said inspector his certificate of inspection, and attach same to the waybills accompanying said shipment, as it was its duty to do, in consequence of which when the cattle reached Kansas City they were unloaded in pens set apart for infected cattle, or those that have been exposed to infection, and that cattle unloaded in such pens, which are known as "quarantine pens," cannot thereafter be sold on the market as stockers and feeders and taken on the ranges and farms of the Northern states to be fed and developed; that the buyers of cattle so placed are limited, and

plaintiffs were obliged to sell these cattle upon the open market without the opportunity of having bids from persons seeking to buy cattle for said purposes, and but for such fact they would have been worth, and would have brought, in the Kansas City market 50 per cent. more per hundredweight than the price they brought, which was $3.25 per hundredweight for the 282 two year old steers, and $3.65 per hundredweight for the 27 aged steers, and $3.10 per hundredweight for the 28 cows.

That defendant negligently failed and refused to receive, load, and transport these cattle promptly, safely, and with reasonable dispatch from Plainview to Kansas City, but had said cattle on the road an unreasonable time; that they left Plainview about 5 o'clock p. m. of the 23d, and had they been received, loaded, and transported with reasonable dispatch they should have reached Kansas City in ample time to have been sold on the market there in good condition on the 24th, when in fact they reached there only soon enough to be sold on the 26th, by reason whereof the cattle were caused to shrink in weight 50 pounds per head, and become drawn, gaunt, and depreciated in strength and appearance, so that their market value was less than it would have been had they been received, loaded, and transported with reasonable dispatch. That the market value of cattle of the same class and character declined to the amount of 15 cents per hundredweight from August 24th, when they should have been sold, to the 26th, when they were sold.

That in order to collect this claim plaintiffs have been compelled to institute this suit and to employ attorneys for that purpose, and a reasonable attorney's fee therefor is $300, and plaintiffs allege that by reason of the negligence of defendants they have been damaged in the sum of $4,000.

Defendant answered by demurrer to the jurisdiction of the court, upon the ground that matters as appear from the petition are exclusively within the jurisdiction of the United States Circuit Court; by general demurrer; by special demurrers to that portion of the petition which complains (1) of not furnishing cars on August 22d, in that it was not shown that defendant was under any obligation to furnish cars on that date, nor that any duty devolved on defendant to furnish cars on any date; and (2) that the portion of the petition which asks for attorney's fees was insufficient in that it gets up an improper element of damage, by general denial, and specially that plaintiffs were negligent in failing to procure the health certificate, and in failing to give the cattle proper attention while in transit, and after their arrival in Kansas City. The court overruled the demurrer to the jurisdiction and also the general demurrer, but sustain-

ed the two special exceptions. The plaintiffs obtained a verdict for $671.

The first assignment of error is that the court erred in admitting in evidence a pamphlet purporting to be a quarantine proclamation issued by the Secretary of Agriculture of the United States in which were set forth regulations concerning the inspection, disinfection, certification, treatment, handling, method of shipment and delivery of live stock which is the subject of interstate commerce. Purporting to be issued by James Wilson, Secretary of Agriculture, the proclamation recites: "The regulations heretofore issued by the Secretary of Agriculture on this subject under date of May 1, 1905, effective on and after June 1, 1905, and all amendments thereto, are hereby revoked to take effect April 15, 1907, on and after which date the regulations herein published shall become effective until otherwise ordered."

[1] The objections to the pamphlet are (1) "the pamphlet was not authenticated as required by law"—citing article 2305, Rev. St. of Texas, and section 882 U. S. Rev. St. (U. S. Comp. St. 1901, p. 669); and (2) "the purported regulations contained in said pamphlet are not shown to have been published in any newspaper or notice thereof given to the defendant as required by the acts of Congress by virtue of which they purport to have been made."

[2] It appears by the second assignment of error that the trial court assumed and so charged the jury that it was the duty of the defendant carrier to have seen that the certificate of inspection provided for by said regulations accompanied the shipment of these cattle to destination along with the proper waybill or bill of lading.

It seems to us that the fact of such proclamation and regulations was a matter of general or judicial knowledge, hence there was no error committed in admitting in evidence the pamphlet. Caha v. U. S., 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415; Larson v. First Nat. Bank, 66 Neb. 595, 92 N. W. 729. And we are of opinion that the court did not err in holding that it was the carrier's, and not the shipper's, duty to see to it that the inspector's certificate accompanied the shipment to destination. We overrule the said assignment; and for the same reasons the errors, if any, concerning the admission of testimony by assignments Nos. 3, 4, 5, 6, and 7 are of no importance.

We overrule the eighth and ninth assignments for the reason that the paragraphs of the charge complained of were not misleading nor erroneous, as the evidence stood.

The charge on the measure of damages complained of by the tenth we approve as correct.

We think the evidence did not warrant the charge on contributory negligence, the refusal of which is complained of by the eleventh assignment.

[3] The twelfth assignment is that the court erred in refusing to give this instruction: "Although the jury may find that plaintiffs' cattle were damaged, they will not consider any damages to said cattle except such as resulted proximately from acts of the defendant company."

The court did not mention "proximate" cause in the charge. The charge, however, specifically informed the jury of each of the acts of negligence complained of and supported by evidence, and in connection with such subject directed the jury, if they found such negligence, to find the damage sustained from the same, stating in the case of negligent delay such damage to be the decline in values caused thereby and in the case of negligence in failing to have the certificate accompany the shipment, and in consequence thereof the cattle were unloaded at destination in pens set apart for infected cattle, and thereby plaintiffs sustained loss, to find for plaintiff such loss. In view of such charges we fail to see how defendant's case was prejudiced by the failure to give the instruction asked.

[4] The thirteenth assignment complains of the refusal of a charge to the effect that the jury should not consider any damages accruing from the necessary unloading of the cattle for feed, water, and rest in transit, unless they found that the cattle were held at the unloading pens for an unreasonable length of time, and that it was the duty of defendant to hold said cattle in the pens for a period of not less than five hours exclusive of the time required for unloading and reloading, and what would constitute a reasonable time at said unloading pens would be governed by the circumstances surrounding the shipment.

We think this charge should have been given. It is true the court submitted the matter of damage for delay upon the question whether defendant was guilty of unreasonable delay in the transportation of the cattle between Plainview and Kansas City, and the effect of this was to exclude as delay all reasonable time consumed in unloading for feed, water, and rest, assuming that the jury knew the law. Appellee says that the jury were fully informed of the situation, and understood that no damages were sought for any shrinkage of the cattle during the necessary delay at Wellington. This the jury may have understood, or they may not. It was a part of the law of the case which defendant had the right to have the jury informed of by the charge. The assignment is well taken.

We overrule the remaining assignments.

Reversed and remanded.