## 6519.　HINES *v.* THE STATE.

1. The evidence was sufficient to warrant the verdict.
2. The court did not err in excluding, as immaterial and irrelevant, what purported to be an affidavit of the prosecutor and principal witness for the State; the transaction to which it referred not being identified therein as the transaction involved in the trial then in progress, and there being no testimony establishing any relation between the facts recited in it and the charge against the accused.

DECIDED JUNE 3, 1915.

Indictment for robbery; from Fulton superior court—Judge B. H. Hill.  February 27, 1915.

*A. E. Wilson, Albert Kemper,* for plaintiff in error.

*Hugh M. Dorsey, solicitor-general, E. A. Stephens,* contra.

WADE, J.  Carl Hines was convicted under an indictment charging him and Ned Ellerby jointly with robbery, for that they did "wrongfully and violently, by force and intimidation, take from the person of Will Jennings, without his consent and with intent to steal the same, three and 75/100 ($3.75) dollars in money, of the value of three and 75/100 ($3.75) dollars and the property of said Will Jennings," etc.  His motion for a new trial was overruled, and he excepted.

The evidence introduced in behalf of the State was in substance as follows:  Will Jennings testified, that on or about June 13, 1914, Carl Hines and Ned Ellerby approached him, while he was walking down Pratt street in the city of Atlanta, and, after engaging him in conversation, asked him if he would not like to gamble, suggesting that they play "skin" or "pool;" that he replied that he did not gamble; that they then invited him to join them in visiting some "woman," and again he refused to favor them with his much desired company.  He said, "They both asked me about gambling  .   .   and about going with them to see some women .   .   and about betting on a belt."  He further testified, that he had $3.75 in his pocket; that Ned Ellerby ran a hand in his pocket, and that he "grabbed" Ellerby's hand in an effort to save his money; that while he had hold of Ellerby's hand, "that man there [referring to Hines] hit me under the ear and then struck me on the shoulder, and I hollered for the officers, and they run off as far as to the back side of the house, and I run after them;" that Hines "had a knife; that was all the weapon I seen; he drawed it on me; they took $3.75 from me, out of my pocket, and then run off together;" that when he called for the police Hines and Ellerby became frightened and ran; that he followed in an effort to regain his stolen money, and, when he was within a short distance of Ellerby, who had his money, Hines gave Ellerby a knife and thereupon Ellerby "made at me with the knife, and I run myself."  On cross-examination the witness apparently became confused and contradicted himself somewhat in his testimony as to exactly how the robbery occurred, and said, "the other man [meaning Ellerby] hit

me and took the money out of my pocket," though he had said on
direct-examination that Ellerby "ran his hand in my pocket and I
grabbed his hand, and that man [Hines] hit me under the ear and
then struck me on the shoulder." Mollie Cochran testified that
she lived on Pratt street, where the robbery occurred, and that she
saw Hines and Ellerby hold up Will Jennings; that Carl Hines gave
Ned Ellerby a knife when Jennings ran after him; that he ran
"about a block on Armstrong, between Pratt and Butler streets,
and then Carl took the money and run off with it and Ned turned
on this man [Jennings] with a knife;" that "*they* scuffled there on
the street; *both* of them were holding Will Jennings." She testi-
fied that she had known Carl Hines for a long time, that she had
never had him arrested, and had nothing against him. The de-
fendant made a short statement of only a few lines, in which he
seemed to think it more important to impress the jury with the
idea that the witness Mollie Cochran was an enemy of his, who
cherished many grievances against him, than to assert his inno-
cence.

1. In the motion for a new trial it is contended, first, that the
evidence did not prove beyond a reasonable doubt that the crime
of robbery was committed as charged in the bill of indictment;
that there was no proof that Ellerby, the defendant's confederate,
used force in abstracting the money from Jennings, or that Jen-
nings in any wise resisted the effort of Ellerby to take his money,
and, therefore, the crime committed was not robbery, but larceny
from the person. We can not agree with counsel in this conten-
tion, since it appears from the evidence (without contradiction
except by the defendant's statement) that Ellerby ran his hand in
Jennings's pocket, and that Jennings then "grabbed" Ellerby's
hand in an effort to save his money. If this be true (and the jury
certainly had the right to accept this testimony if they saw fit to
do so), it necessarily follows that Ellerby was obliged to use force
in abstracting the money so taken. Not only was this sufficient to
authorize the jury to infer that force was used in taking the money,
but the evidence that Jennings was beaten and bruised was of itself
a sufficient circumstance to show that actual force was used. As
to whether Jennings resisted the efforts of Ellerby to take his
money, it is enough to say that the Supreme Court and this court
have held that if force be used, it avails the accused nothing if the

victim makes no resistance, or is even unconscious. *Moran* v. *State,* 125 *Ga.* 33 (53 S. E. 806), and cases there cited; *Bowen* v. *State,* ante, 110 (84 S. E. 730).

It will be noted that what is said above concerns Ellerby, the defendant's partner in crime; and since it appears to us that the evidence was sufficient to make out a plain case of robbery against him, the next question which presents itself for our consideration is the second one raised in the motion for a new trial, to wit: "If Ned Ellerby was proven guilty of the crime of robbery, was Carl Hines a principal in the second degree?" We think the evidence introduced in behalf of the State was sufficient to authorize the jury to find that Hines and Ellerby were acting in concert, under an arrangement or agreement and with a common intent to rob Jennings, and that the act of one in furtherance of this agreement was therefore the act of the other. Section 42 of the Penal Code, defining principals in the first and second degrees, is as follows: "A person may be principal in an offense in two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present, aiding and abetting the act to be done," etc. In 12 Cyc. 187 (note), it is said that "in a statute providing that one who aids, abets, or procures another to commit a crime may be prosecuted the same as the principal [see section 43 of the Penal Code], the word 'aid' means to help, assist, or strengthen; the word 'abet' to encourage, counsel, induce, or assist, and the word 'procure' means to persuade, induce, prevail upon, or cause." See also State *v.* Snell, 5 Ohio S. & C. P. Dec. 670.

The evidence as to the precise part Hines played in committing the offense charged in the indictment is, as said above, somewhat conflicting, and of such a character that it is very difficult to determine what is the exact truth of the case. There was evidence, however, sufficient to support the verdict returned. Conceding, for the sake of the argument, that the testimony of the prosecutor that Hines "didn't put his hands on me, he didn't touch me," is true (though he testified differently on direct-examination), the evidence amply shows that the defendant aided and abetted in the crime charged and was actuated by the same criminal intent as Ellerby. The uncontradicted evidence of the prosecutor shows that both the defendant and the defendant's associate Ellerby ap-

proached him, and that both invited him to engage in certain named games of chance, and also suggested that they visit a certain woman or certain women; and from this the jury might have been authorized to infer that the accused was then acting in concert with Ellerby, as these joint invitations certainly furnished very strong ground for the conclusion that he and Ellerby were actuated by a common intent, and that he was therefore equally responsible with Ellerby for what thereafter followed. In 2 Am. & Eng. Enc. L. 33, it is said that the presence, companionship, and conduct before and after the offense, are all circumstances from which one's participation in the criminal act may be inferred. As said above, we think this evidence, coupled with the undisputed proof as to the taking of the money from Jennings by Ellerby, might have been sufficient to warrant the verdict; but in addition thereto Mollie Cochran, an eye-witness of the robbery, testified that she saw the men when they robbed Jennings; that Hines gave Ellerby a knife, and Ellerby gave Hines the money taken from Jennings; that "*they* scuffled there on the street; both of them were holding Will Jennings." She testified further that she did not see Hines strike Jennings, but that Ellerby struck him on the head, *while Hines held him*. We think therefore that the grounds of the motion for a new trial, that the verdict is contrary to evidence and without evidence to support it, etc., are without merit.

2. The amendment to the motion for a new trial presents one question for determination: Did the court err in excluding the following documentary evidence from the jury? "Georgia, Fulton county. Before me, the undersigned authority, this day personally came Will Jennings, who, after being duly sworn, on oath says with reference to a certain criminal case pending against Carl Hines and Ned Elven, wherein said parties are charged with stealing $3.75 from this defendant, that the said Carl Hines did not take the money from him nor did he assist the said Ned Elven in taking said money, but that the money was taken and stolen by the said Ned Elven, and that he is the party that should be punished therefor, and not Carl Hines. [Signed] Will Jennings. Sworn to and subscribed before me this 5th day of January, 1915. A. E. Wilson, Notary Public, Fulton county, Georgia." Without referring to any other possible objection to this affidavit, which was tendered in evidence for the purpose of impeaching the prosecutor

by proof of contradictory statements, it is enough to say it was clearly irrelevant and immaterial. It will be readily observed that the affidavit purports to refer to "a certain criminal case pending against Carl Hines and Ned Elven, wherein said parties are charged with stealing $3.75 from this defendant," and that nothing more is set out therein from which it may be determined that the affidavit is intended to relate to the specific case on trial against Hines in the superior court of Fulton county, under an indictment charging Carl Hines and Ned "Ellerby" jointly with the offense of robbery by force and intimidation. The affidavit does not disclose whether the "case pending" against Hines and "Elven," charged with stealing $3.75 from Will Jennings, was pending in Fulton county or in some other county, or even whether it was pending in this State; nor does it set out whether the two persons named therein were charged with simple larceny, robbery by force and intimidation, robbery by snatching, or larceny from the person, or that "Carl Hines" and "Ned Elven" mentioned therein were the same persons named in the indictment as Carl Hines and Ned Ellerby; and therefore the affidavit does not necessarily relate to the charge of robbery under investigation in this case. An affidavit purporting to have been made by the prosecutor in the case on trial, who had just testified to the guilt of the accused under a charge of robbery, which recited simply that the defendant was not guilty under a charge of stealing $3.75 from him, and did not identify the charge referred to in the affidavit as the charge under which the accused was then being tried, was clearly inadmissible, where there was no testimony going to show that the affidavit was intended to refer to the particular charge or transaction then being investigated, and where the prosecutor, who was alone interrogated in regard thereto, and whose name purported to be signed to the affidavit, declined even to admit that he had signed it. Had the attesting witness (who it appears was of counsel for the accused, and who was then present) testified not only that the prosecutor signed the paper, but also that the paper as signed was intended to relate to the particular charge of robbery preferred against Hines and Ellerby (not Elven) which was then on trial in the superior court of Fulton county, the affidavit might have been admissible for the purpose of impeachment.          *Judgment affirmed.*