W. H. TIPPETT, Jr., Appellant,

v.

Lorean HART, Appellee.

No. 8368.

Court of Civil Appeals of Texas,
Amarillo.

June 18, 1973.

Rehearing Denied July 30, 1973.

Williams, Broughton & Forbis, John T. Forbis, Childress, for appellant.

John E. Chamberlain, Memphis, for appellee.

ELLIS, Chief Justice.

This is an appeal from a judgment awarding damages arising from the defendant's alleged tort of interference with the plaintiff's performance of her contractual obligations under a Cropland Adjustment Agreement with the United States Department of Agriculture. This agreement prohibited grazing, under the conditions specified, upon a certain portion of plaintiff's land, and a monetary penalty was assessed against her in consequence of the non-compliance with the non-grazing provision occasioned by the defendant's unauthorized grazing of his cattle upon plaintiff's land. This conduct on defendant's part was held to be an intentional interference with the performance of her contract and resulted in the rendition of the judgment against him for the amount of the penalty assessed against her. Affirmed.

Lorean Hart, plaintiff-appellee, instituted a suit against W. H. Tippett, Jr., defendant-appellant, seeking to recover damages based upon the tort of interference alleged to have been committed by the defendant which resulted in her loss of payments under the Cropland Adjustment Program of United States Department of Agriculture, as hereinafter set out. She alleged, among other matters, that she was the owner of a tract of land containing approximately 170 acres, completely fenced, located in Hall County, Texas, and that the defendant maliciously, wrongfully, willfully and unlawfully opened the gate located on the east side of the land and turned cattle he was pasturing into her 170 acre tract. She further alleged that the defendant, without having any right to possession of the field, expressed or implied, on and before April 15, 1971, pastured her field, maliciously, willfully and unlawfully. Also, her petition set out that prior to April 15, 1971, she had entered into a contract with the United States of America, acting

through the Agricultural Stabilization & Conservation Committee for Hall County, Texas, involving 121.6 acres of the 170 acre tract. She further alleged that the defendant knew of this government contract which prohibited the grazing of the cattle. She alleged that the defendant thereby knowingly and intentionally interfered with the existing contractual relationship and acted with a total disregard for her rights and thereby caused her to breach such contract and suffer damages thereby in the sum of $2,553.60, in that she would have been paid such sum if the defendant had not caused the grazing of the field. Her final allegation was to the effect that the defendant's conduct was the proximate cause of the monetary damages suffered.

In addition to certain special exceptions to the plaintiff's pleadings, which were overruled, the defendant denied opening the gate, breaking a fence or intentionally turning any cattle under his control and management upon the land in question. Also, he specifically denied that his cattle ever grazed upon the land in question and alleged that if they did so it was because they broke through a fence or gate or went through a gate inadvertently left open. He further alleged that he never observed the cattle upon the land in question, and if their presence on the land had been called to his attention, he would have immediately removed the livestock. Also, he contended that the vegetation on the land was exceedingly sparse, and the value of the forage or feedstuff would have been substantially less than $1.00 per acre, and that there was no permanent damage done to the land even if the livestock did enter such land without the defendant's knowledge thereof.

The case was tried by the court without a jury and resulted in a judgment for the appellee. From that judgment the appellant has brought this appeal.

Pursuant to request of the defendant, the court made the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"1. Plaintiff is the owner of 170 acres of land in Hall County, Texas, involved in this suit.

"2. The 170 acres of land is enclosed by a fence with a gate on the east side of the tract.

"3. 121.6 acres of this 170 acres is, and was on the date of the acts complained of by Plaintiff, the subject of a Cropland Adjustment Agreement between Plaintiff and the U. S. Department of Agriculture, which agreement provided for annual cash payments to Plaintiff for her agreement to divert acres from farm production and to maintain vegetation cover on the acres.

"4. The agreement prohibited the use of the land for grazing livestock.

"5. Sometime prior to April 15, 1971, while the agreement was in effect, the cover crop on Plaintiff's land was grazed off.

"6. Cattle were seen on the acres in question on April 15, 1971, by Larry Rogers and B. B. Gibson of the Hall County ASCS Office.

"7. Defendant opened the gate to Plaintiff's land intentionally and left it open, allowing his cattle to enter the field through the opened gate.

"8. The cattle on Plaintiff's land belonged to Defendant and were on Plaintiff's land without her consent or knowledge.

"9. Plaintiff owned no livestock of her own.

"10. Defendant had actual knowledge that Plaintiff's government contract prohibited grazing of her land and knew of the special damages to Plaintiff if a breach occurred.

"11. Defendant admitted his liability to Plaintiff for her loss under the government contract.

"12. Defendant's acts in opening the gate and allowing his cattle to graze Plaintiff's land were intentional and done for the purpose of receiving the benefit of the use of Plaintiff's land.

"13. Plaintiff's cover grass was completely grazed off by Defendant's cattle in violation of Plaintiff's contract.

"14. The Hall County ASCS Committee assessed a penalty of $2,553.60 against Plaintiff, to be withheld from funds payable to her under her government contract.

"15. The sole reason for the penalty assessed and the damages to Plaintiff was the unauthorized grazing of Plaintiff's land by Defendant.

## "CONCLUSIONS OF LAW

"Defendant's act of grazing Plaintiff's land constituted an intentional interference with the performance of her government contract resulting in her breach of the contract and rendering him liable to Plaintiff for her monetary loss from such breach in the amount of $2,553.60."

The appellant presents nine points of error. In his first five points he urges that the facts alleged by the appellee do not form the basis of a recovery for the tort of interference, but merely for the tort of trespass. Also, he challenges the sufficiency of the evidence to support the plaintiff's recovery for the tort of interference. In his points nos. 6 and 7, respectively, he contends that the trial court erred in finding that a contract existed between the appellee and an agency not a party to these proceedings which prohibited the acts of appellant complained of by appellee's pleadings, and that any contractual obligations of appellee with any third party were breached. In his points nos. 8 and 9, he asserts that there was "no evidence" and "insufficient evidence," respectively, to establish the existence or breach of contractual obligations on the part of the appellee.

Primarily, the appellant challenges the propriety of the court's judgment against him on the basis of the tort of interference, and, in any event, the sufficiency of the evidence to establish that tort.

The nature of the tort of interference as recognized in Texas was succinctly stated in the 1907 decision by the Texas Supreme Court in the case of Lytle v. Galveston, H. & S. A. Ry. Co., 100 Tex. 292, 99 S.W. 396, 10 L.R.A.,N.S., 437 in the following language:

"That one who willfully and without legal justification or excuse interferes so as to bring about a breach of a contract between others is guilty of an actionable wrong is no longer a question in this court."

In 33 Tex.Jur.2d, Interference § 2, Essential Elements of Interference, at 96, we note the following statement:

"A cause of action for wrongful interference with a contract is shown where there have been intentional and willful acts, the acts were calculated to cause damage to the contracting parties in their lawful business and were done with the unlawful purpose of causing damage and loss, without right of justifiable cause on the part of the actor, and where actual damage and loss resulted."

Also, in the case of Cooper v. Steen, 318 S.W.2d 750 (Tex.Civ.App.—Dallas 1958, no writ) the law regarding tortious interference is set forth as being any intentional invasion of or interference with property rights causing injury without just cause or excuse. Also, it was pointed out in that case that the defendant must have knowledge that his conduct will interfere with the performance of the contract.

The appellant insists that the appellee has the burden of alleging and proving by competent evidence that there was a breach of the contract in question by the appellee, Lorean Hart, and that the breach was intentionally procured or induced by the ap-

pellant in this case. He further contends that there is insufficient evidence to establish that the appellee breached her contract and that there is no evidence to the effect that the appellant intentionally procured or induced appellee to breach her contract. It is appellant's position that inducement or procurement is a necessary element which must be proved prior to recovery under the theory of interference and cites various cases wherein the defendant had induced one of the parties to the contract to breach that contract. In support of his position that "inducement" is a necessary element in the tort of interference, the appellant has quoted this general statement in 33 Tex.Jur.2d Interference, § 1, at 93:

> "A person who knowingly induces a party to a contract to break it, to the damage of the other party, commits an actionable wrong for which he may be held liable in damages to the injured party, . . . ."

He contends, specifically, that there is no evidence that the appellant induced, i. e., "caused, inclined the will, influenced, persuaded, or in any manner prevailed upon or induced" the appellee to breach a contract. Although both terms, "inducement" and "procurement," or variations thereof, with respect to the alleged breach are used, we note the precise terms are neither uniformly nor always used or required in interference cases. According to Black's Law Dictionary, Third Edition, procure means to persuade, induce, prevail upon or *cause*. Hines v. State, 1915, 16 Ga.App. 411, 85 S.E. 452, 454. Also, in the case of Custer v. Thaxton, 287 S.W. 528 (Tex. Civ.App.—Amarillo 1926, no writ) it was stated that the related term "procuring cause" means " . . . the direct cause—the proximate cause—any acts or series of acts set in motion by the efforts of appellee [party involved] which, continuing in an unbroken chain from their inception, *produced the result* or thing which was done."

The appellee in this case contends that the cause of action requires the damage to have been *procured* by the wrongdoer and that the tort of interference is established here because she was damaged by reason of the appellant's wrongful invasion of her rights under the contract affecting her land with no wrongful action on her part. It is also noted that in the various interference cases cited by the appellant, one of the contracting parties participated in the wrongful act. Such is not the case here. Further, we find no cases of interference in which inducement was required in which it is shown that the only misconduct is that of the defendant.

An examination of the authorities discloses that interference with contract relations includes not merely the procurement of a breach of contract, but all invasion of contract relations, including any act injuring or destroying persons or property which retards, makes more difficult or prevents performance. 27 A.L.R.3d 1227. In 86 C.J.S. Torts § 44, pp. 961–962, we find the following language:

> " . . . The interference by a third person with a contractual relationship, including interference with the contract *without inducing a breach,* as for example, by injuring persons so that they may be disabled to perform, or by *destroying* or damaging *property which is the subject matter of the contract,* or by doing other acts which make performance more burdensome, difficult or impossible, or of less or no value to the one entitled to performance, may constitute an actionable tort, under the theory that such interference constitutes an invasion of the property rights of the parties to the contract." (Emphasis added)

In the previously cited case of Cooper v. Steen, it was clearly recognized that any intentional invasion of, or interference with, property rights or personal liberty causing injury without just cause is an actionable tort.

In the case of Piedmont Cotton Mills, Inc. v. H. W. Ivey Const. Co., 109

Ga.App. 876, 137 S.E.2d 528 (1964), it was emphasized that the tort of interference with contractual relations is not limited to the procurement of a breach of a contract, but that such interference constitutes an actionable tort which embraces within its scope all intentional invasions of contractual relations, including any act injuring or destroying property and so interfering with the performance of the contract itself, regardless of whether breach of contract is induced, citing 86 C.J.S. Torts § 44a, at 959, and Carpenter, "Interference With Contract Relations," 41 Harvard Law Review, at 728. The case further pointed out that interference with contractual relations is an intentional tort, and if intentional interference is to be required, it presupposes knowledge of the plaintiff's interests or, at least, of facts that would lead a reasonable man to believe in their existence. See Prosser, Torts (2d Ed. 1955), pp. 732–735. In Carpenter, "Interference With Contract Relations," 41 Harvard Law Review, supra, it is stated that the tort of inducing breach of contract is but a specific application of the broad general principle that damage to another intentionally without justification or privilege is a tort.

■ Also, in the recent case of Cain v. Fontana, 423 S.W.2d 134 (Tex.Civ.App.— San Antonio 1967, writ ref'd n. r. e.), the court recognized that damages resulting from the trespass of placing debris on another person's property which resulted in loss of profits was in effect a loss occasioned by an *interference* with one's business, and that profits lost as a result of such *interference* are recoverable in a tort action. Thus, in the instant case, the tort of interference resulted from an invasion of appellee's rights to contract in regard to her land, without proven wrongdoing on her part. The appellant admitted that he knew of the existence of the contract and that he knew that the land was not to be grazed. Further, there is evidence that he committed the acts of permitting his cattle to graze the land and destroy the subject matter of the contract, that he knew the effect of his acts, and he failed to establish to the court's satisfaction by his evidence that the act was unintentional or excusable. It is well established that the weight and credibility of the testimony and evidence is for the determination of the trier of the facts.

The appellant contends that the trial court erred in finding that the acts of the appellant resulted in a breach of contract between the appellee and a third party. The appellee introduced into evidence a copy of the executed Cropland Adjustment Agreement between the appellee and the United States Department of Agriculture. The producer agreed that the designated acreage would be diverted for the agreement period from production of crops to approved practices and uses, i. e., "maintain veg. cover." The designated acreage was not to be grazed during the term of the agreement except as provided by regulation and that the producer was responsible for full compliance with the terms of the agreement and was liable for a refund or forfeiture of payments for failure to fully comply with such terms. The contract provided that appellee would receive a specified compensation each year if the land is not grazed and a cover crop is maintained. The court's finding that the pasture was grazed and the cover crop was destroyed was supported by the testimony of the employees of the United States Department of Agriculture and the appellee. One of the employees testified that the appellant told the entire Hall County A.S.C. S. Committee in a meeting that the cattle belonged to him, and that such employee saw cattle in the field and the grass cover had been completely grazed to the ground. Another government employee testified he saw cattle in the field and that it had been heavily grazed. The appellee testified that the grassland that was in the government program was heavily grazed. Thus, the evidence indicates that the land was grazed by appellant's cattle, and that such noncompliance resulted from the appellant's acts.

The appellant further argues that the court erred in finding that he was liable to the appellee in the amount of $2,553.60, as all of the elements of tortious interference were not established by the testimony. A copy of the minutes of the meeting of the Hall County A.S.C.S. Committee at which a penalty was assessed for unauthorized grazing in the amount of $21.00 per acre for 121.6 acres for the total sum of $2,553.-60 was introduced in evidence. The record shows that the appellee testified that appellant admitted liability to her and told her on several occasions that he would pay her the amount of the penalty. The appellee took no action to appeal from the penalty after the appellant had admitted liability and promised to pay her such sum of money.

■ Also, the appellant contends that the trial court erred in failing to base its conclusions of law upon the legal theory of trespass rather than upon the basis of the tort of interference. Under the facts of this case, it is our opinion that the same result would have been reached as the record would have established the same measure of damages. Admittedly, if the defendant wrongfully permitted the grazing of the land, a trespass was committed, but the trespass resulted in an *interference* with contractual rights of the appellant and the proper measure of damages would have been that applicable to the tort of interference. In the case of Cain v. Fontana, supra, the defendant Cain had dumped debris on the parking lot belonging to Fontana and used in connection with his business. The court held that Fontana would be entitled to recover damages caused as a result of loss of business which was caused by the interference of trespass. In this case, the court allowed judgment in a trespass case for damage caused by *interference*. The following language from the Fontana case is significant:

" . . . A loss occasioned by an interference with one's business from the actionable conduct of another is a proper element of damages, and profits lost as a result of such *interference* are *properly* recoverable in a tort action." (Emphasis added).

In any event, it appears that the interference with the performance of the contract caused by the destruction of the cover crop occasioned by conduct of the defendant which resulted in the assessment of the penalty would establish the measure of damages, for the interference with contract rights was the tort from which the damages resulted.

The appellant complains of the trial court's finding that a contract existed between appellee and the U. S. Department of Agriculture which prohibited the acts complained of by appellee's pleadings. In this connection appellant contends that there is no evidence identifying the 121.6 acres of land covered by the government contract as being land included in the 170 acre fenced tract of land mentioned in the record. The testimony of the appellee clearly shows that the contract in question relates to no land other than the above mentioned 170 acre tract. The evidence further shows that the appellant had knowledge of the existence of the contract and its provisions. The appellee stated that she had informed appellant of the contract every year the contract had been renewed and that he had discussed the Soil Bank Program with her and even advised her to keep the land in the government program. The appellant admitted that he knew she had the land in some kind of program and that the tract involved was not to be grazed. There is evidence that in 1968, he wanted to graze another pasture adjoining the field but could not do so because his cattle would get into the field "under the government program," and that he built a fence three quarters of a mile in length on the north boundary of the field in question in order to be allowed to graze other land. We believe this evidence is sufficient to support the trial court's finding that the appellant had actual knowl-

edge that appellee's contract prohibited grazing of the land and of the special damages if such breach occurred.

■ The appellant further contends that the court erred in finding that any contractual obligations with any third party were breached, and that the evidence in the record does not establish the existence or breach of contractual relations on the part of the appellee. The contract between the appellee and the U. S. Department of Agriculture clearly incorporates by reference all of the Federal regulations. Also, the contract provided there would be no grazing upon the land covered by the contract "except as provided in the regulations." The appellant, in effect, contends that appellee had the burden of proving these regulations and a breach thereof. In support of his position he cites the case of Wann v. Metropolitan Life Insurance Co., 41 S.W.2d 50 (Tex.Comm'n App.1931, holding approved), which was a case in which the claimant was attempting to recover benefits under a group insurance policy. Although the claimant introduced into evidence the certificate of insurance which had been issued to him, he failed to introduce the group policy which had been incorporated by reference into the certificate. The court held that in order to recover on the policy it was necessary that both instruments, the certificate and the policy, which constituted the whole contract, be introduced in evidence before a recovery would be permitted. In this case, the court was concerned not with a private contract incorporated by reference into another private contract, as in the Wann case, but by regulations promulgated by a Department of the United States Government, pursuant to federal statute. The situations presented are distinguishable in that Texas courts are required to take judicial notice of the laws of the United States, including all the public acts and resolutions of Congress, and proclamations of the president thereunder, as well as administrative rules and regulations adopted by boards, departments and commissions pursuant to federal statutes. 1 McCormick and Ray, Texas Evidence, Judicial Notice, § 172, at 184. Also, see Pecos & N. T. Ry. Co. v. Jarman & Arnett, 138 S.W. 1131 (Tex.Civ.App.—San Antonio 1911, no writ) (regarding judicial notice of the rules and regulations of the U. S. Department of Agriculture); Dallas General Drivers, Warehousemen and Helpers et al. v. Jax Beer Co. of Waco, 276 S.W.2d 384 (Tex. Civ.App.—Dallas 1955, no writ). We note, also, that the specific regulations pertaining to the alleged "Noncompliance" was introduced into evidence by the defendant.

■ This record discloses no irregularities in administering the regulations here involved. Furthermore, when the plaintiff proves a prima facie case of interference, it becomes incumbent on the defendant to show justification, and the burden is on the defendant to sustain by proof his allegations of justification or privilege. 45 Am.Jur.2d, Interference § 56, at 330. The trial court, who heard the testimony and considered the evidence submitted in the cause, and who was entitled to determine its weight and credibility, did not find such justification or privilege.

After a careful consideration of the entire record, it is our opinion that the appellee has established her cause of action based upon the tort of interference and that there is sufficient evidence to support the trial court's factual findings as well as its conclusions of law that the appellant's conduct constituted an intentional interference with the appellee's performance of her government contract, thereby rendering him liable to appellee for her monetary loss by reason of such breach. Accordingly, the appellant's points of error are overruled and the judgment of the trial court is affirmed.