A89A1327, A89A1328. MANAGEMENT COMPENSATION GROUP/SOUTHEAST, INC. et al. v. UNITED SECURITY EMPLOYEE PROGRAMS, INC.; and vice versa.
A89A1329. SIMMONS v. UNITED SECURITY EMPLOYEE PROGRAMS, INC.
A89A1330. COMPENSATION SYSTEMS, INC. et al. v. UNITED SECURITY EMPLOYEE PROGRAMS, INC.
(389 SE2d 525)

McMURRAY, Presiding Judge.

Plaintiff United Security Employee Programs, Inc. ("USEP"), a Georgia corporation, organized to engage in the business of selling insurance policies, filed suit to share in commissions from the sale of certain insurance policies to the Coca-Cola Company and to recover other damages. As amended, the complaint contains 16 counts stating claims against one or more of seven corporate and individual defendants.

Plaintiff allegedly combined in 1983 with defendant Compensation Systems, Inc. ("CSI") to pursue the sale of insurance to the Coca-Cola Company under an arrangement whereby both corporations would share equally in any commissions. Count 5 stated a

breach of contract claim against defendant CSI for failure to pay to plaintiff 50 percent of any commissions defendant CSI received as a result of insurance purchases by the Coca-Cola Company. Plaintiff alleges that on or about June 5, 1984, a partnership known as "The Consortium" was formed to solicit sales of life insurance to the Coca-Cola Company for the purpose of funding various executive benefit programs. "The Consortium" included plaintiff, CSI, defendant Management Compensation Group/Southeast, Inc. ("MCG"), and defendant Tax and Corporate Planning Group, Inc. ("TCPG"), a Georgia corporation of which the sole shareholder was defendant Simmons. Count 3 stated a breach of contract claim against defendants CSI, TCPG, and MCG, predicated on the alleged agreement creating "The Consortium." Count 4 stated a claim against defendants CSI, TCPG, MCG, and Simmons for breach of fiduciary duty by converting the commissions earned by plaintiff. Defendant Optimum Funding Corporation ("OFC") is the agent of record with the insurer who issued certain life insurance policies to the Coca-Cola Company. Defendants Hefner and Balser are the presidents of defendants CSI and MCG.

Plaintiff filed a motion for partial summary judgment as to Counts 3, 4 and 5 of its amended complaint on the grounds that it is entitled to 25 percent of commissions payable on life insurance purchased by the Coca-Cola Company in 1985 to fund certain *employer* funded executive benefit programs. (Commissions arising from the Coca-Cola Company's purchase of additional insurance for *employee* funded programs are also at issue in the cases sub judice, but were not the subject of plaintiff's motion for partial summary judgment.) Defendants CSI, TCPG, MCG, OFC, and Simmons responded by moving for summary judgment ("defendants' motion for summary judgment") as to Counts 1 to 11 of plaintiff's amended complaint.

The superior court entered an order on July 8, 1988, disposing of portions of the opposing motions for summary judgment. Plaintiff's motion for partial summary judgment as to Counts 3 and 5 was granted. As to Count 4, the superior court denied plaintiff's motion on the grounds that the claim stated was inconsistent with the contract claim of Count 3 so that an election of remedies required that Count 4 not be pursued. Defendants' motion for summary judgment as to Count 4 was granted on the theory that since there was no evidence of benefit to these defendants from withholding the funds at issue no conversion was shown. The superior court denied defendants' motion for summary judgment insofar as it related to plaintiff's contentions regarding the exclusion from The Consortium agreement of employee funded executive benefit plans. No ruling was entered as to the remaining issues raised by defendants' motion for summary judgment.

Four appeals from the superior court's order of July 8, 1988, were filed. Appellants in Case No. A89A1327 are defendants MCG, TCPG,

OFC, Balser, and the estate of defendant Simmons. Case No. A89A1328 is the cross-appeal of plaintiff USEP. The estate of defendant Simmons, deceased, is the appellant in Case No. A89A1329. In Case No. A89A1330 the appellants are defendants CSI and Hefner. *Held*:

1. On June 24, 1988, a suggestion of the death of defendant Simmons was filed. The executrix of the estate of Simmons was substituted as party defendant on July 15, 1988. The superior court's order of July 8, 1988, having been filed in the interval is void as to defendant Simmons. *South DeKalb &c. of Metro. Atlanta v. Frazier*, 236 Ga. 903, 905 (225 SE2d 890); *Allen v. Cloudburst Mfg. Co.*, 162 Ga. App. 188 (290 SE2d 529).

2. Under the statutory scheme, only licensed persons may act as life insurance agents (OCGA § 33-23-2 (a)) and receive payment of commissions for services as a life insurance agent. OCGA § 33-23-2 (c). Only natural persons may be licensed as life insurance agents although a partnership or corporation may be an "agency" provided that all partners, officers, directors, stockholders, and employees who shall act as agents shall be licensed. OCGA § 33-23-1 (1). In order for an incorporated insurance agency to share in any commissions, all of its employees, stockholders, directors, or officers who solicit, negotiate, or effectuate insurance contracts must be qualified insurance agents holding a currently valid license. OCGA § 33-23-2 (d). "Agent" is defined in OCGA § 33-23-1 (2) (A).

Licensure must be proven to exist both at the time services were rendered and at the time recovery is sought. Contracts made in violation of such regulatory statutes are void and unenforceable. *Management Search v. Kinard*, 231 Ga. 26, 28 (2) (199 SE2d 899). Thus, a failure to comply with the statutory scheme governing life insurance agents will bar any recovery on the basis of a contractual claim. This strict rule has been held to be necessary to compel compliance with the licensure requirement. *McLamb v. Phillips*, 34 Ga. App. 210, 216 (129 SE 570).

The three shareholders of plaintiff USEP are Clement, Jackson and Riddle. While Riddle was a licensed life insurance agent at all times relevant to this action, Jackson was unlicensed until August 1986, after this action was filed. Clement was licensed only for the last four or five months of 1984 and after August 1986. Notwithstanding the lack of licensure, in July and August of 1983, both Clement and Jackson, as representatives of the partnership between plaintiff and CSI, took part in meetings with representatives of the Coca-Cola Company. Their purpose in participating in these meetings and in making other contacts with the Coca-Cola Company was to influence the Coca-Cola Company to purchase insurance from plaintiff.

Defendants contend that plaintiff's unlicensed stockholders,

Clement and Jackson, were engaged in the solicitation or procurement of a contract of life insurance in violation of OCGA §§ 33-23-1 (2) (A) and 33-23-2. Thus, defendants argue that plaintiff lacked capacity to enter into a contract to receive commissions from the sale of life insurance and that the superior court erred in granting plaintiff's motion for partial summary judgment as to Count 3 (and defendant CSI argues·that the grant of plaintiff's motion as to Count 5 was also error). Since plaintiff contends that the acts of Clement and Jackson did not constitute "solicitation" or "procurement," within the meaning of the statutes, an issue is raised as to the correct construction of these terms which are not defined in the statute.

"In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter." OCGA § 1-3-1 (b). "In the absence of words of limitation, words in a statute should be given 'their ordinary and everyday meaning.' *Richmond County Bd. of Tax Assessors v. Ga. R. Bank &c. Co.*, 242 Ga. 23, 25 (247 SE2d 761) (1978)." *Risser v. City of Thomasville*, 248 Ga. 866 (286 SE2d 727). See also *Radford v. IPD Printing & Distrib.*, 184 Ga. App. 64 (2) (360 SE2d 656) and *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 599 (4), 600 (327 SE2d 736). These terms "are not words of art or words connected with a particular trade or subject matter but, rather, words that are in general use and are understood in their ordinary signification." *Anderson v. Little &c. Funeral Home*, 242 Ga. 751, 752 (1) (251 SE2d 250).

Webster's New Intl. Dictionary, 2d ed., defines "solicit" as "to entreat, importune . . . to endeavor to obtain by asking or pleading . . . to urge . . ." and defines "procure" as "to prevail upon by persuasion . . . induce . . . to endeavor to bring about. . . ." See also in this connection *Chattanooga Glass Co. v. Strickland*, 244 Ga. 603, 604 (1) (261 SE2d 599); *Melton v. Helms*, 83 Ga. App. 71, 73 (62 SE2d 663); *Hines v. State*, 16 Ga. App. 411, 414 (85 SE 452); and *Rose v. State*, 4 Ga. App. 588, 593 (2), 594 (62 SE 117). The terms at issue are quite broad and thus extremely restrictive of the activities of unlicensed stockholders such as those in the cases sub judice. While plaintiff contends that the activities of its unlicensed stockholders amounted only to introductions or furnishing a lead, when the activities of the shareholders are examined in the context of the correct construction of the regulatory statutes it is clear that plaintiff's stockholders Clement and Jackson were engaged in the solicitation or procurement of an application for a contract of life insurance in violation of OCGA §§ 33-23-1 (2) (A) and 33-23-2.

Next, plaintiff contends any activities of its unlicensed stockholders which constituted improper solicitation or procurement are irrele-

vant since they took place prior to the formation of The Consortium. Plaintiff argues that since the commissions at issue were paid as a result of the success of The Consortium and not for the unsuccessful efforts which predated the formation of The Consortium, it would be illogical that an improper solicitation involving a proposed sale that was never consummated would preclude it from earning a commission on a different consummated sale. However, the underlying premise of plaintiff's argument, that is, the absence of any causal link between the solicitations of plaintiff's unlicensed stockholders prior to the formation of The Consortium and The Consortium sales, is not established by uncontroverted evidence.

It remains for a jury to determine whether the improper solicitations of plaintiff's stockholders contributed to the sales of life insurance which gave rise to the commissions at issue. The superior court erred in granting plaintiff's motion for partial summary judgment as to Counts 3 and 5 of the complaint.

3. All of the defendants also contend that the superior court erred in denying defendants' motion for summary judgment as to Counts 1 to 3 and 5 to 11. Two arguments are presented in support of this contention. Defendants maintain that plaintiff lacked the capacity to contract to receive insurance commissions or to recover such commissions due to the improper solicitations of its unlicensed stockholders. This has been discussed at length in Division 2 of this opinion. Defendants also argue that there was no enforceable contract between plaintiff and defendants.

First, we will consider separately defendants' motion for summary judgment as to Counts 1, 2, and 6 to 11. The superior court has not ruled upon those issues except to deny defendants' motion insofar as it related to plaintiff's contentions regarding the exclusion from The Consortium agreement of employee funded executive benefit plans. The superior court's ruling as to the single specified issue is correct under the evidence (but void as to defendant Simmons for the reason stated in Division 1). We may not consider the additional issues argued by defendants as to these counts which were not ruled on by the lower court. *Porter v. Mid-State Homes*, 133 Ga. App. 706, 708 (2) (213 SE2d 10).

Before considering, on the merits, the denial of defendants' motion for summary judgment as to Counts 3 and 5, we note that these counts present no claim against defendants UFC, Balser, Hefner or Simmons. Nonetheless, each of these four defendants has asserted enumerations of error seeking a grant of summary judgment or similar relief in regard to these counts. However, as parties whose rights and obligations are not affected by the claims stated in Counts 3 and 5, these defendants lack standing to complain as to the rulings in regard to these counts.

Finally, as to the motion for summary judgment on Counts 3 and 5 of defendants CSI, MCG, and TCPG, we note that insofar as these defendants rely on the matters discussed in Division 2, genuine issues of material fact remain for resolution by a jury. We also find that the record contains evidence of the contracts alleged by plaintiff, sufficient to preclude a grant of summary judgment in favor of these defendants. While the evidence showing the existence of the contracts between plaintiff and CSI as well as the later creation of The Consortium, consisted primarily of oral rather than written agreements, plaintiff's evidence shows that the contracts were sufficiently complete as to their terms to be binding. Also, we note the absence of evidence of termination of either of the alleged partnership agreements.

4. The superior court did not err in granting the motion for summary judgment of defendants CSI, MCG and TCPG as to Count 4 of the complaint. "[Plaintiff] is not seeking to recover some specific money, either in certain bills or coins to which [it] had title, but instead seeks to recover a certain amount of money generally. There is no evidence in the record that there were ever any particular bills delivered or counted out which belonged to [plaintiff]. Rather it appears [plaintiff's] claim . . . could have been discharged by the payment of any lawful currency of the United States, whether it constituted a part of [defendants'] gross profits then in hand or not. Thus, this is not such a case for which a cause of action for conversion was intended. See *Cooke v. Bryant*, 103 Ga. 727 (30 SE 435) (1898)." *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750, 751 (1) (365 SE2d 494).

While plaintiff argues that Count 4 "states a claim based on *breach of fiduciary duties*, not conversion," the only breach of fiduciary duty alleged is conversion. In our view, plaintiff urges a distinction without a difference.

5. In Case Nos. A89A1327, A89A1329, and A89A1330 the judgment is affirmed in part and reversed in part due to the reasons stated in Divisions 1, 2 and 3. The judgment is affirmed in Case No. A89A1328 for the reasons stated in Division 4.

*Judgment affirmed in part and reversed in part in Case Nos. A89A1327, A89A1329, and A89A1330. Judgment affirmed in Case No. A89A1328. Carley, C. J., and Beasley, J., concur.*

DECIDED NOVEMBER 29, 1989 —
REHEARING DENIED DECEMBER 20, 1989.

*Long, Aldridge & Norman, Jack H. Watson, Phillip A. Bradley, J. James Johnson, Virginia G. Morrow,* for Management Compensa-

tion et al.

*Love & Willingham, Daryll Love, Hezekiah Sistrunk, Jr., Allen Willingham, Robert Monyak*, for United Security.

*Minkin & Snyder, Gary M. Snyder*, for Simmons.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant II, Carolyn R. Gorwitz*, for Compensation Systems.