**S. TEXAS WILDHORSE DESERT INVS., INC., Debtor/Appellee,**

v.

**TEXAS COMMERCE BANK–RIO GRANDE VALLEY, N.A., et al., Defendants/Appellees,**

**James Hodge et al., Intervenors/Appellants.**

**No. CIV.A.M–03–343.**

United States District Court, S.D. Texas, Brownsville Division.

Aug. 19, 2004.

Katie Pearson Klein, Dale & Klein, McAllen, TX, John Douglas Barrow, Attorney at Law, Corpus Christi, TX, for Plaintiff.

Paul Gabriel, Attorney at Law, Susan Rees Williams, Williams & Williams, McAllen, TX, for Intervenor–Plaintiffs.

Shelby A. Jordan, Jordan, Hyden, et al., Corpus Christi, TX, Michael J. Urbis, Jordan, Hyden, et al., Brownsville, TX, for Defendant Texas Commerce Bank.

Javier Rene Correa, Attorney at Law, Weslaco, TX, for Rene Correa, Administrator of the Estate of Arthur J. Shwery Deceased, et al.

## MEMORANDUM OPINION AND ORDER

HANEN, District Judge.

This case is an appeal from a decision of the Bankruptcy Court. In the proceedings below, the appellants (hereinafter "Hodges") filed proofs of claim premised on South Texas Wildhorse Desert Investments, Inc.'s (hereinafter "Debtor") alleged acts of tortious interference with contract and tortious interference with inheritance. Bankruptcy Judge Richard S. Schmidt denied these claims on the merits. For the reasons elaborated below, this Court **DENIES** the Debtor's Motion to Dismiss Appeal From Order Confirming Plan of Reorganization, but **AFFIRMS** the Bankruptcy Court's denial of the Hodges' claims and **DENIES** the relief sought by the Hodges in their appeal concerning the same. In addition, the Court also **DENIES** all other pending motions as being moot.

## I. BACKGROUND

### A. Procedural History

The procedural history of this case is extensive and complicated, dating back to litigation that arose concerning the estate of Arthur J. Shwery, who passed away in 1981. *Docket No. 5* at 4. Fortunately, the portion of this saga that is directly relevant to the present appeal only stretches back a few years. The relevant procedural background is set forth below.

The Hodges' twin tortious interference claims against the Debtor were first raised in Hidalgo County Court at Law No. 1 during probate proceedings initiated upon the demise of Shwery (Cause No. 14,679–A). These claims were also asserted

against Debtor's sole shareholder, Ramon Garcia. On August 31, 2001, the probate court granted summary judgment in favor of the Debtor, determining that a disputed 3/17 interest in a parcel of real property belonged to the Debtor rather than the Hodges and issuing a take-nothing judgment on the latter's tortious interference claims. The judgment did not address the Hodges' claims as they concerned Garcia. Almost two years later, on June 17, 2003, the probate court *sua sponte* ordered the estate closed. Although the Hodges eventually filed two appeals—one concerning the 3/17 interest and another concerning closure of the probate estate—with the Thirteenth Court of Appeals (Cause Nos. 13–01–823–CV, 13–03–460–CV), they moved for dismissal of the same on September 4, 2003. On October 27, 2003, the appellate court granted the Hodges' motion and dismissed both appeals. *See Correa v. S. Texas Wildhorse Desert Invs., Inc.*, Nos. 13–01–823–CV, 13–03–460–CV, 2003 WL 22430213, at *1 (Tex.App.—Corpus Christi Oct.27, 2003, no pet.) (per curiam) (unpublished opinion) (dismissing appeals).

Meanwhile, back on November 21, 2001, the Debtor filed a bankruptcy petition in the federal Bankruptcy Court (Cause No. 01–23901). The Hodges' allegations of tortious interference were reasserted in the bankruptcy proceeding as a result. On July 1, 2003, after the probate estate had been closed, but while the Hodges' state court appeals remained pending, the Bankruptcy Judge issued three interrelated rulings. Judge Schmidt entered: (1) an Order Sustaining Debtor's Objections to Claims and Disallowing Claims For All Purposes; (2) Findings of Fact and Conclusions of Law (with Respect to Debtor's Objections to Claims and Motion to Estimate Claims); and (3) an Order Confirming [Debtor's] Plan [of Liquidation]. The disallowed claims were those for tortious interference asserted by the Hodges. The Bankruptcy Court denied them on the merits.

On July 10, 2003, the Hodges timely filed a Motion For Reconsideration concerning the Bankruptcy Court's denial of their claims premised on tortious interference and the findings of fact and conclusions of law that undergirded the Bankruptcy Court's denial. A hearing on the Hodges' Motion For Reconsideration was held on July 23, 2003. Subsequently, on July 30, 2003, the Bankruptcy Court issued an order that amended the original July 10, 2003 Findings of Fact and Conclusions of Law in a few respects. However, the remainder of the Hodges' Motion for Reconsideration, including those portions related to their tortious interference claims, was denied. On August 8, 2003, the Hodges filed a Notice of Appeal.

## B. Appellate Procedural Posture

During the course of the bankruptcy proceedings, a separate adversary proceeding was also initiated concerning the aforementioned parcel of property in which the Debtor was found to possess a 3/17 interest (Cause No. 03–7008). Texas Commerce Bank—Rio Grande Valley (hereinafter "Bank") was determined to be owner of the other 14/17 interest.[1] On July 30, 2003, the Bankruptcy Court issued

---

1. This matter has already been the subject of a previous appeal from the Bankruptcy Court. The District Court affirmed the Bankruptcy Court's determination, and, on December 2, 2003, the Fifth Circuit Court of Appeals dismissed the Hodges' appeal from the District Court's affirmance. *See In re S. Texas Wil-* *dhorse Desert Invs., Inc.*, No. 03–40763 (5th Cir. Dec. 2, 2003) (unpublished opinion) (dismissing Hodges' appeal from District Court Cause No. M–02–546). A copy of this unpublished opinion is attached as Exhibit B to *Docket No. 15.*

an Order for 11 U.S.C. § 363(h) Sale and Approval of Settlement Between Debtor and Bank, and subsequently issued an Order Denying Stay of 11 U.S.C. § 363(h) Sale of Property and of Order Disallowing Claims for All Purposes, and Setting Bond to Effectuate Stay of Such Proceedings Pending Appeal on August 28, 2003.

Two separate appeals to the District Court were taken from the Bankruptcy Court's rulings in the bankruptcy case proper and the adversary proceeding thereafter. These appeals were docketed separately from one another and assigned to two different District Courts. *See Docket No. 6* at ¶ 1 (noting docketing of two separate appeals); *Docket No. 21* at ¶¶ 2, 5 (stating that the district clerk's office did this of its own accord without knowledge of counsel). The "first" appeal to the District Court, which concerned the § 363(h)-related rulings was docketed as Cause No. M–03–317. The "second" appeal, Cause No. M–03–343, is the present one.

On February 18, 2004, the Hodges conceded that their appeal of the Bankruptcy Court's decision regarding the § 363(h) sale was moot. In response, United States District Judge Keith P. Ellison dismissed Cause Number M–03–317 the following day. Accordingly, the claims disposed of by Judge Ellison are not before this Court; however, determining precisely what was before the District Court and declared moot in M–03–317 is obscured by the Hodges' briefing. The Hodges' initial briefs in both M–03–317 and this case are identical in content. *See generally Docket No. 20.* Subsequent briefing by the Hodges, however, indicates that the issues before this Court on appeal relate solely to: (1) the denial of the Hodges' claims premised on tortious interference; and (2) the confirmation of the Debtor's liquidation plan. *Docket No. 21* at ¶¶ 2, 4. For all

practical purposes, both issues are one, as the necessity of revisiting the Debtor's liquidation plan is entirely contingent on the viability of the Hodges' claims for tortious interference. *See id.* at ¶ 6 ("Hodge therefore asserts that the Bankruptcy Court's ruling which improperly devalued their claims can be addressed and correct[ed] by this Court and funded by the plan."); *see also Docket No. 6* (complaining on page ii of Appellants' Brief of "the Bankruptcy Court's confirmation of Debtor's Chapter 11 Plan of Reorganization *to the extent that it addresses the issues appealed*") (emphasis added).

## II. DISCUSSION

The Debtor has articulated two distinct procedural obstacles to this Court's consideration of the Hodges' appeal. The first, which challenges this Court's jurisdiction, is without merit. The second challenge, which essentially boils down to a claim of res judicata (or claims preclusion), is meritorious. In the alternative, the Court affirms the Bankruptcy Court's denial of the Hodges' tort claims.

### A. Timeliness of the Notice of Appeal and Appellate Jurisdiction

■ Debtor maintains that the Hodges' Appeal of the Bankruptcy Court's Order Confirming Debtor's Plan of Reorganization was untimely filed. *Docket No. 2* at ¶¶ 1–3. Citing Bankruptcy Rules 8001, 8002, and 9023, as well as *In re Robinson,* 640 F.2d 737, 738 (5th Cir.1981), Debtor maintains that the alleged untimeliness of this appeal deprives the Court of jurisdiction. *Docket No. 2* at ¶¶ 1–3. Accordingly, the Debtor requests dismissal of the appeal concerning the aforesaid order. *Id.* at ¶ 4.

The Debtor does not contest the fact that the Hodges' July 10, 2003 Motion For Reconsideration was timely filed. As pre-

viously noted, the Hodges' expressly requested that the Bankruptcy Court reconsider denial of their claims premised on tortious interference and the findings of fact and conclusions of law that undergirded the Bankruptcy Court's denial. Although the Hodges did not expressly request reconsideration of the Debtor's plan, the Hodge's Motion For Reconsideration did request that the Bankruptcy Court's order confirming the Debtor's plan be abated until their claims were reconsidered. The obvious reason for this abatement request is that, if the Bankruptcy Court had decided to recognize the Hodges' claims, the plan would have had to be modified. On July 30, 2003, the Bankruptcy Court denied the Hodges' Motion For Reconsideration.[2] On August 8, 2003, the Hodges filed notice of the instant appeal, which explicitly referenced the Bankruptcy Court's denial of the tort claims, the findings of fact and conclusions of law underlying said denial, the order granting in part and denying in part the motion for reconsideration, and the order confirming Debtor's plan.

Rule 8002(a) of the Federal Rules of Bankruptcy Procedure provides that a notice of appeal must be filed "within 10 days of the date of entry of the judgment, order, or decree appealed from." The Debtor's position, therefore, may only be understood as a contention that the Hodges were required to file their notice of appeal within ten days of the Bankruptcy Court's original entry of its three orders concerning this matter on July 1, 2003, rather than filing their notice of appeal within ten days

of the Bankruptcy Court's subsequent July 30, 2003 order granting in part and denying in part the Hodges' Motion For Reconsideration.

The Debtor, however, overlooks Rules 8002(b)(1) and 8002(b)(2), each of which provide that the ten-day period within which a notice of appeal "runs from the entry of the order disposing of ... a timely motion ... to amend or make additional findings of fact under Rule 7052 ... [or] to alter or amend a judgment under Rule 9023." Rules 7052 and 9023 simply render Rules 52 and 59 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.[3] There is no such thing as a Motion For Reconsideration, either under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure. Courts confronted with motions so styled must construe them according to their substance. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir.2002). The Hodges' Motion For Reconsideration is analogous to motions requesting relief under both 7052 and 9023. *See id.* (noting that Rule 59(e) exists to "call into question the correctness of a judgment" and to "correct manifest errors of law or fact") (internal quotation marks omitted); *In re Fellows*, 19 F.3d 245, 246 (5th Cir.1994) (same). Similarly, Rule 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." The Fifth Circuit has held that any such "motion filed within the ten-day period [for appeal] is in fact analogous to a Rule 9023, or FED.

---

2. Notwithstanding the Bankruptcy Court's eventual denial of the Hodges' Motion For Reconsideration, they maintain that the Bankruptcy Court's entry of an order agreeing to hear the Motion For Reconsideration did, in effect, abate the confirmation of the Debtor's plan until their Motion For Reconsideration was denied. *Docket No. 9* at ¶ 2. The Hodges

contend that their notice of appeal was timely filed for this reason. *Id.* at ¶ 3.

3. Although Rule 7052 appears to be limited solely to "adversary proceedings" by its terms, it is also made applicable to all contested matters via Rule 9014(c). *In re Fellows*, 19 F.3d 245, 246 & n. 2 (5th Cir.1994).

R. Civ. P. 59 motion." *In re Aguilar*, 861 F.2d 873, 874 (5th Cir.1988) (per curiam). Accordingly, the Hodges' notice of appeal was due within ten days of the Bankruptcy Court's July 30, 2003 order disposing of the Hodges' Motion For Reconsideration. The Hodges' notice of appeal satisfied this jurisdictional deadline.

■ Perhaps, the Debtor's jurisdictional argument might also be more narrowly construed as applying solely to the Hodges' appeal of the Bankruptcy Court's confirmation of the liquidation plan. That is, the Debtor might be claiming that, however timely the Hodges' appeal of the denial of their tortious interference claims might be, their appeal of the Debtor's plan, which was not explicitly raised in the Motion For Reconsideration, is untimely and jurisdictionally barred. As a practical matter, such an understanding of the appellate posture of this case makes little sense given that the Hodges' desire to revisit the plan is wholly contingent on recognition of their tortious interference claims. That is, both the Motion For Reconsideration and the Notice of Appeal really only seek to raise a single issue (*viz.*, the claims premised on tortious interference), which, if recognized as valid, would inevitably have an impact on the plan. *See supra* Part I.B.; *cf. Docket No. 12* at 24 (Bank's statement that "the outcome of this proceeding could conceivably have an effect on the estate being administered in bankruptcy"). Moreover, as a legal matter, motions of the sort governed by Rule 8002(b) extend the time for appeal in general, for all issues, rather than solely for those for which reconsideration was urged. *See Aguilar*, 861 F.2d at 875 ("We see no useful purpose in requiring an appeal to be filed where a motion for reconsideration, which may obviate the need for an appeal, has been brought within the time period to take an appeal.").

■ As a practical matter, it might be too late in the day to alter the plan, even if the Hodges' claims were determined to be meritorious. The Bank has argued as much, asserting that the doctrine of equitable mootness precludes this appeal on the ground that the plan has already been substantially consummated. *See Docket No. 14* at ¶¶ 2–15. However, as its name implies, the "equitable mootness doctrine is prudential rather than jurisdictional." *In re Vineyard Bay Dev. Co., Inc.*, 132 F.3d 269, 271 (5th Cir.1998). Therefore, this Court possesses jurisdiction to consider this appeal.[4]

## B. Finality of the State Probate Judgment and Claims Preclusion

Although the Debtor never employs the terms "res judicata" or "claims preclusion,"[5] it effectively asserts this defense

---

4. Given the Court's rulings in Part II.B. and Part II.C. of this Memorandum Opinion and Order, there is no need to consider the Bank's equitable mootness argument. Accordingly, the Bank's Motion to Dismiss Appeal as Moot, *Docket No. 14*, is hereby denied as being moot itself.

5. Instead, the Debtor argues this issue in terms of the doctrine of standing. However, this Court "is not bound by how a party labels its motion" or characterizes its arguments. *Effjohn Int'l Cruise Holdings, Inc. v. A & L Sales, Inc.*, 346 F.3d 552, 560 (5th Cir.2003). The nature of the arguments should be ascertained from their substance, and from the substance of the relief sought, not from mere labels. *Id.; see also Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir.1996) (en banc). The substance of the Debtor's argument is claims preclusion, and that is how this Court has construed its argument.

It may be that the Debtor avoided the terms "res judicata" or "claims preclusion" out of undue regard for *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), in which the Court held that the doctrine of claims preclusion is inapplicable in bankruptcy proceedings where dischargeability of a

against the claims of the Hodges that were disallowed by the Bankruptcy Court. *See generally Docket No. 3.* In particular, Debtor argues that the claims asserted in the Bankruptcy Court were decided against the Hodges in the state probate proceeding. *Docket No. 3* at ¶¶ 2–3. In that proceeding, that state court awarded Debtor "a take nothing judgment on all counterclaims" asserted by the Hodges on August 31, 2001.[6] *Id.* at Exhibit B. At the time that the Bankruptcy Court addressed the Hodges' tort claims, an appeal from the portion of the probate court's summary judgment concerning the 3/17 interest remained pending in the Thirteenth Court of Appeals. *Id.* at ¶ 4. Just prior to the conclusion of the bankruptcy proceedings, the lower state court issued an order closing the estate and ending the probate proceedings. The Hodges also appealed this order to the Thirteenth Court of Appeals. Subsequent to the conclusion of the bankruptcy proceedings, however, the Hodges moved for dismissal of both of their state court appeals and the appellate court granted their motion. *Id.* at ¶¶ 5–6. On the basis of this turn of events, Debtor

argues that the take-nothing judgment is final and "abolishes the underlying basis for the tort claims filed by Appellants in the Bankruptcy Court against the Debtor." *Id.* at ¶ 7; *see also Docket No. 5* at 3, 8 (characterizing take-nothing judgment as final and enforceable after dismissal of state court appeals).

The Hodges largely do not contest the sequence of events relied on by the Debtor. *See Docket No. 8* at ¶¶ 1–6; *Docket No. 19* at 2–3. They do, nonetheless, dispute the Debtor's conclusion that their claims are precluded from reconsideration. As related by the Hodges, their claims for tortious interference were first asserted in the probate court. *Docket No. 8* at ¶ 1. In the probate proceeding, the Hodges asserted their claims both against the Debtor and its sole shareholder, Ramon Garcia. *Id.* "Shortly before Debtor filed its bankruptcy petition, the then-presiding judge of the probate court had granted partial summary judgment in favor of Debtor on Appellants' claims." *Id.* at ¶ 2. The summary judgment did not address the Hodges' claims as they pertained to Garcia.[7]

---

debt is concerned. *Id.* at 138, 99 S.Ct. 2205. *Felsen,* however, is not controlling in this matter. In *Felsen,* the Court addressed "a debt previously reduced to judgment." *Id.* at 128, 99 S.Ct. 2205. In other words, the validity of the debt was unquestioned. *Id.* at 133, 99 S.Ct. 2205. What was in question was whether a debt recognized as being valid by a state judgment could be discharged in bankruptcy. *Id.* at 128, 99 S.Ct. 2205.

In contrast, this Court is faced with an entirely different question in this suit. As subsequently detailed in Part II.B., the question herein is whether the probate court judgment in question is a valid final judgment and binds this Court. "The Supreme Court has interpreted the Full Faith and Credit Act to require that federal courts grant the same preclusive effect to a state court judgment as the state court would have given to it." *Hussain v. Boston Old Colony Ins. Co.,* 311 F.3d 623, 635 (5th Cir.2002). Accordingly, the Hodges' claims are subject to claims preclu-

sion to the extent provided under Texas law, notwithstanding the fact that this appeal occurs in the context of a bankruptcy proceeding.

Moreover, even if this distinction did not render *Felsen* inapposite, *Felsen* would nonetheless fail to be controlling inasmuch as that decision was grounded in the fact that the issues pertinent to dischargeability had not actually been litigated in the prior proceedings that produced the judgment. 442 U.S. at 134–38, 99 S.Ct. 2205. In contradistinction, the Hodges have not asserted that their tort claims were not fully litigated in the trial court during the probate proceedings.

**6.** The state court's partial summary judgment was signed August 31, 2001, but is filed stamped September 4, 2001. The distinction makes no difference in this case.

**7.** Various portions of the record indicate that the Hodges' either were pursuing, are pursu-

As previously noted, the summary judgment in question also adjudicated title of a 3/17 interest in a certain parcel of real property, determining that it belonged to the Debtor. *Id.* at ¶ 3. The Hodges appealed this portion of the summary judgment. *Id.* at ¶ 4. However, relying on *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995), the Hodges maintain that the portion of the summary judgment concerning the tortious interference claims was interlocutory and unappealable due to the nature of probate law.[8] *Docket No. 8* at ¶¶ 4–5; *Docket No. 19* at 2. Ultimately, the Hodges' appeal concerning the 3/17 interest was dismissed on their own motion and the probate court *sua sponte* closed the estate. In light of these events, the Hodges maintain that, "insofar as that summary judgment related to the Appellants' torts claims, it remained an interlocutory judgment which in effect died with the closing of the estate." *Docket No. 8* at ¶ 6; *see also Docket No. 19* at 4 ("The Order Closing Estate addressed the phase of probate relating to the administration of the probate estate and whether estate debts had been paid. It did not purport to address other matters pending before the Probate Court, such as the Appellant's cross-claims . . . .").

The federal full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to accord state court judgments the same preclusive effect to which they would be entitled in the courts of the rendering state's jurisdiction. *In re Erlewine*, 349 F.3d 205, 210 (5th Cir.2003). In this case, the judgment in question is that of a Texas state court sitting in probate. Therefore, Texas's law concerning claims preclusion governs this dispute. *In re Garner*, 56 F.3d 677, 679 (5th Cir.1995). Under Texas law, "[a] court may invoke the doctrine of res judicata to bar consideration of a claim already presented to a Texas court upon finding: (1) that the prior judgment was rendered by a court of competent jurisdiction; (2) that there was a final judgment on the merits; (3) that the parties, or those in privity with them, are identical in both suits; and (4) that the same cause of action is involved in both suits." *In re Camp*, 59 F.3d 548, 550 (5th Cir.1995) (internal quotation marks omitted).

As set forth above, the second element concerning finality is the sole matter in

ing, or may pursue in the future their tort claims against Garcia in his individual capacity. Although a shareholder may enjoy privity with a corporation such that a judgment concerning the latter is res judicata as to the former under certain circumstances, *see Dudley v. Smith*, 504 F.2d 979, 982 (5th Cir.1974) (alter ego relationship), this issue is not before this Court. The probate court's summary judgment did not address Garcia individually. Accordingly, this Court's analysis and its decision today concern only the Debtor and not Garcia individually.

8. Although the Hodges' argument premised on *Crowson* is plausible, it is not necessarily beyond dispute. The standard for appealability of interim rulings in probate matters is somewhat in flux in the wake of *Crowson*. See *Estate of Navar v. Fitzgerald*, 14 S.W.3d 378, 379 (Tex.App.—El Paso 2000, no pet. h.) ("Despite this apparently simple test expressed by the Supreme Court, the law regarding appealability of probate orders is less than well settled."). One need look no further than Justice Castillo's concurring opinion concerning the dismissal of the Hodges' state court appeals in Cause Nos. 13–01–823–CV, 13–03–460–CV, *see Docket No. 19* at Exhibit 3, for evidence of the unsettled nature of the law concerning finality. However, neither the Debtor nor the Bank contests the Hodges' characterization of *Crowson* or its applicability to the portion of the probate court's summary judgment concerning the Hodges' tort claims. Therefore, for purposes of this opinion, the Court assumes that the Hodges' position is correct. As the Hodges' ultimate argument is mistaken even if their construction of *Crowson* is correct, the Court need not and does not resolve this particular issue.

dispute relevant to the matter of claims preclusion. The fact that the prior state proceedings at issue occurred in probate do complicate the issue of finality to be sure. Nonetheless, on close examination, there is no doubt that the Hodges' claims for tortious interference are now subject to a final state court judgment. As such, claims preclusion precludes further litigation of those causes of action in this Court.

Generally speaking, Texas abides by the so-called One Final Judgment Rule. *See, e.g., Quanaim v. Frasco Rest. & Catering,* 17 S.W.3d 30, 40 (Tex.App.—Houston [14th Dist.] 2000, pet. denied) (citing TEX. R. CIV. P. 301); *see also* TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."). As a result, "[a]n appeal may only be taken from a final judgment which disposes of all issues and parties." *Peveto v. D'Entremont,* 900 S.W.2d 142, 144 (Tex.App.—Beaumont 1995, writ denied). Partial summary judgments are, accordingly, not final and appealable. *See Chase Manhattan Bank, N.A. v. Lindsay,* 787 S.W.2d 51, 53 (Tex.1990) (holding that summary judgments that do not dispose of all claims and parties are interlocutory in character); *City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex.1988) (per curiam) ("A summary judgment that fails to dispose expressly of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court ....."). The non-finality of such judgments, of course, precludes parties from premising claims of res judicata thereon. *See Mower v. Boyer,* 811 S.W.2d 560, 562 (Tex.1991) ("A partial summary judgment that is interlocutory and non-appealable is not final and cannot support a plea of res judicata.").

"[I]n the absence of an order of severance, the party against whom an interlocutory summary judgment has been rendered has his right of appeal when and not before such partial summary judgment is merged in a final judgment disposing of all parties and issues." *Guillory,* 751 S.W.2d at 492; *accord Webb v. Jorns,* 488 S.W.2d 407, 408–09 (Tex.1972) (in absence of severance interlocutory orders become final when court enters order "disposing of the whole case"). If the final judgment entered is inconsistent with the prior interlocutory summary judgment, the former will modify or nullify the latter depending on their respective terms. *See Dickson & Assocs. v. Brady,* 530 S.W.2d 886, 887 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ) ("The entry of a final judgment inconsistent in its terms with a prior interlocutory judgment operates to set aside the interlocutory judgment as a necessary result of the rule that only one final judgment may be entered in a case."). However, in the absence of such conflict, the partial summary judgment simply merges with the final judgment, even if the final judgment makes no mention of the interlocutory one. *See Loy v. Harter,* 128 S.W.3d 397, 409 (Tex.App.—Texarkana 2004, pet. filed) ("A partial summary judgment is not final, and does not become final, until it is merged into the final judgment in the case."); *Columbia Rio Grande Reg'l Hosp. v. Stover,* 17 S.W.3d 387, 391 (Tex.App.—Corpus Christi 2000, no pet.) ("Where an interlocutory order is entered disposing of the interests of less than all parties and claims, that order does not become final until a subsequent order is entered disposing of the remaining parties and claims. Once an order has been entered disposing of all remaining parties and issues, all the orders merge, creating a final and appealable judgment.") (internal citations omitted); *City of Garland v. Allen,* No. 05–94–01374–CV, 1995 WL

500214, at *3 (Tex.App.—Dallas Aug.18, 1995, writ denied) (unpublished opinion) ("An interlocutory summary judgment is merged into a final judgment and, thus, becomes final for purposes of appeal, whether or not the interlocutory judgment is specifically named within the final judgment."). Only then is a partial summary judgment entitled to preclusive effect in other proceedings. *See, e.g., Muniz v. State Farm Lloyds,* 974 S.W.2d 229, 232 (Tex.App.—San Antonio 1998, no pet.) (noting that, once all issues are disposed of, a "partial summary judgment merge[s] into the final judgment," and, "[a]s a final judgment, it is entitled to preclusive effect").

 Probate matters complicate these otherwise clear general rules. "An appealable order in a probate proceeding need not be one which fully and finally disposes of the entire proceeding." *Ayala v. Brittingham,* 131 S.W.3d 3, 6 (Tex. App.—San Antonio 2003, pet. filed); *accord Villarreal v. Zukowsky,* 54 S.W.3d 926, 929–30 (Tex.App.—Corpus Christi 2001, no pet.); *In re Guardianship of Murphy,* 1 S.W.3d 171, 172 (Tex.App.— Fort Worth 1999, no pet.). This is because "[a] probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based." *Ayala,* 131 S.W.3d at 6. Of necessity then, orders issued in probate proceedings are governed by a differing standard of finality and appealability (*i.e.,* the standard articu-

lated in *Crowson*).[9] *Id.* at 6–7. This particular wrinkle of probate law accounts for the Hodges' (undisputed) contention that the state court's partial summary judgment concerning their tortious interference causes of action were not final and appealable during the pendency of proceedings in the Bankruptcy Court.

 However, the intricacies of probate law cannot account for the Hodges' present argument on appeal, which amounts to the contention that the partial summary judgment in the probate proceedings never became final and appealable. It is undisputed that, on June 17, 2003, the probate court ordered the estate closed on its own motion. During the April 5, 2004 hearing before this Court, counsel for the Hodges conceded that "[t]here is no longer anything ongoing in state court" and that the probate proceedings concluded in "May or June of last year." Assuming that the Hodges' initial contention about the interlocutory nature of the probate court's partial summary judgment concerning their tortious interference claims is correct, the closure of the estate would render that partial summary judgment final and appealable. Closure of an estate generally divests a probate court of jurisdiction, rendering all of its interlocutory judgments final and appealable. *See, e.g., Wittner v. Scanlan,* 959 S.W.2d 640, 642 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (noting that, if order at issue were interlocutory in nature, it would not become appealable "until the estate is closed"); *Hawkins v. Estate of Volkmann,*

9. In *Crowson,* the Supreme Court of Texas articulated the finality standard for purposes of probate proceedings as follows:
 If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may

 logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.
 897 S.W.2d at 783. As with non-probate matters, the Supreme Court also noted that probate orders could be rendered final and appealable via severance. *Id.*

898 S.W.2d 334, 343 (Tex.App.—San Antonio 1994, writ denied) ("The court hearing probate matters does not lose its jurisdiction after the entry of each order. It does not lose jurisdiction until the estate is closed."). The Hodges did file an appeal concerning the probate court's closure of the estate, but there is no indication that this appeal referenced or encompassed the interlocutory partial summary judgment at issue herein.[10] Indeed, the Hodges have disavowed that any of their state court appeals concerned the portion of the partial summary judgment pertaining to their tort claims.

 The Hodges did, however, reassert their tortious interference claims anew in the Bankruptcy Court during the pendency of the probate proceedings. In Texas, a partial summary judgment generally precludes relitigation of the same issues in state court, notwithstanding the interlocutory nature of the judgment. *See, e.g., Thompson v. Curtis,* 127 S.W.3d 446, 449 (Tex.App.—Dallas 2004, no pet. h.) ("Once an interlocutory summary judgment is entered, the issues decided cannot be further litigated unless the judgment is set aside by the trial court, or unless the summary judgment in reversed on appeal."); *Crumpton v. Mike Stevens, MGA,* 936 S.W.2d 473, 477 (Tex.App.—Fort Worth 1996, no writ) ("The issues determined in a partial summary judgment are final although the judgment is interlocutory. After an interlocutory summary

judgment is granted, the issues it decides cannot be litigated further unless the trial court sets the judgment aside or the partial summary judgment is reversed on appeal."). Generally speaking, an adverse judgment rendered in probate should be directly appealed, not collaterally attacked in other proceedings. *Boyer,* 811 S.W.2d at 563. However, a federal bankruptcy court is not precluded from considering claims premised on state judgments that have not yet become final. *See State of Texas v. Wellington Resources Corp.,* 706 F.2d 533, 536–37 (5th Cir.1983) (upholding bankruptcy court's refusal to apply collateral estoppel variety of res judicata on basis that state court temporary restraining order at issue did not constitute a final judgment).

Although the state probate court's partial summary judgment concerning the Hodges' tortious interference claims was, perhaps, interlocutory during the pendency of the bankruptcy proceedings below, there is no question that the state probate judgment has become final, enforceable, and binding in the interim. The relevant sequence of events is as follows:

(1) on August 31, 2001, the probate court issued its summary judgment in favor of the Debtor regarding both the 3/17 interest and the Hodges' tort claims;

(2) sometime thereafter, the Hodges timely filed a notice of appeal concerning

---

**10.** During the April 5, 2004 hearing, counsel for the Hodges represented to this Court that she did not recall any appeal having been perfected concerning the closure of the estate in general or the interlocutory partial summary judgment at issue. Documents subsequently submitted to this Court by the Hodges contradict this prior recollection concerning the closure of the estate. *See Docket No. 19* at Exhibit 3 (containing concurring opinion authored by Justice Errlinda Castillo accompanying dismissal of the Hodges' appeals that

establishes that the Hodges did appeal the closure of the estate on July 18, 2003). Counsel for the Hodges also acknowledged this appeal during hearings before the Bankruptcy Court on July 23, 2003 and August 20, 2003. This appeal was dismissed along with the Hodges' other state court appeal on their own motion. *Correa v. S. Texas Wildhorse Desert Invs., Inc.,* Nos. 13–01–823–CV, 13–03–460–CV, 2003 WL 22430213, at \*1 (Tex.App.—Corpus Christi Oct.27, 2003, no pet.) (per curiam) (unpublished opinion).

the 3/17 interest (Cause No. 13–01–823–CV);

(3) in November 21, 2001, the Debtor filed its bankruptcy petition;

(4) the Hodges filed their Proofs of Claim in the Bankruptcy Court on April 24, 2003;

(5) the probate proceedings were concluded by order on June 17, 2003;

(6) on July 1, 2003, the Bankruptcy Court denied the Hodges' claims;

(7) the Hodges timely filed a notice of appeal in state court concerning the closure of the estate on July 18, 2003 (Cause No. 13–03–460–CV);

(8) after having heard the Hodges' motion for reconsideration, the Bankruptcy Court finalized its denial of the Hodges' claims on July 30, 2003; and

(9) on October 27, 2003, pursuant to the Hodges' own motion, the state appellate court dismissed both of their state court appeals.

Dismissal of the appeal concerning the closure of the estate rendered the probate court's closure final, which, in turn, started the appellate clock ticking for purposes of all of the probate court's prior interlocutory orders and judgments. Accordingly, absent further appeal, the interlocutory summary judgment at issue became final when no appeal concerning the same was filed by November 26, 2003. *See* Tex. Prob. Code § 5(g) (providing for normal appellate review of final orders issued in probate proceedings); Tex. R. App. P. 26.1 (requiring appeal to be perfected "within 30 days after the judgment is signed").

In support of their contention that the partial summary judgment rendered in the probate court became a nullity (*i.e.*, never became final), the Hodges principally rely on *Hyundai Motor Co. v. Alvarado*, 892 S.W.2d 853 (Tex.1995) (per curiam) and *Newco Drilling Co. v. Weyand*, 960 S.W.2d 654 (Tex.1998) (per curiam). *See Docket No. 19* at 4–6. More accurately, one could say that they attempt to distinguish the instant case from the aforementioned ones in an effort to forestall their application to the procedural circumstances at bar. However, *Hyundai* and *Newco* may not be distinguished in the fashion that the Hodges suggest.

In *Hyundai*, the Supreme Court of Texas held that a partial summary judgment entered against the plaintiff survived the plaintiff's subsequent nonsuit of the case. 892 S.W.2d at 854–55. The court reasoned that, otherwise, a "plaintiff could in effect avoid any summary judgment by merely requesting a nonsuit after the case was adjudicated by the summary judgment." *Id.* at 855. In *Newco*, the Supreme Court extended *Hyundai's* holding to cover instances in which a partial summary judgment against a plaintiff preceded dismissal for want of prosecution. 960 S.W.2d at 655–56. "Any other interpretation would allow such a plaintiff to avoid *Hyundai Motor* by simply doing nothing and waiting for the trial court to dismiss the case," the court reasoned. *Id.* at 656. Both cases reiterated the principle that "[a] partial summary judgment is a decision on the merits unless set aside by the trial court" that "becomes final upon the disposition of the other issues in the case." *Hyundai*, 892 S.W.2d at 855; *Newco*, 960 S.W.2d at 656 (quoting *Hyundai*).

Read together, *Hyundai* and *Newco* stand for the broad proposition that parties may not avoid unfavorable interlocutory judgments simply through the expedient of abandoning the litigation in which the adverse judgment was rendered. This same rationale applies to the conduct of the Hodges in this case. During the proceedings in state court, the Hodges made use of the probate court's jurisdiction, *see Docket No. 19* at 4 (citing Tex. Prob. Code

§ 5(f)), to assert their claims of tortious interference against the Debtor. These claims were rejected by the probate court. Subsequently, the Hodges moved the Texas appellate court to dismiss both of their appeals, which rendered the probate court's closure of the estate final. All probate proceedings ceased, and the Hodges never appealed the portion of the adverse partial summary judgment concerning their tort claims after the conclusion of the probate proceedings. To allow the Hodges to relitigate their tortious interference claims in this forum would simply allow parties to sidestep *Hyundai* and *Newco* by the expedient of failing to appeal an adverse partial summary judgment after it ceased to be interlocutory in nature and had become final. Such indulgence runs directly counter to the direction provided by the Supreme Court of Texas in *Newco. See* 960 S.W.2d at 656 (reiterating that "a party against whom . . . an interlocutory summary judgment has been rendered will have his right of appeal when . . . the same is merged in a final judgment disposing of the whole case").

In their attempt to forestall the self-evident application of *Hyundai* and *Newco* to the present procedural facts, the Hodges rely on *Frazier v. Progressive Cos.*, 27 S.W.3d 592 (Tex.App.—Dallas 2000, pet dism'd) and *Okerson v. TBF Fin., L.L.C.*, No. 03-03-00719-CV, 2003 WL 22348894 (Tex.App.—Austin Oct.16, 2003, no pet.) (unpublished opinion), both of which interpret and apply the holdings of *Hyundai* and *Newco*. Neither case, however, lends the Hodges' position any credence. Indeed, on the instant facts, *Okerson* is downright debilitating to the argument that the Hodges are attempting to advance.

In *Frazier*, the Court of Appeals declined to extend *Newco* and *Hyundai* to a fact situation in which the party who ob-

tained partial summary judgment was also the party who allowed the case to be dismissed for want of prosecution. 27 S.W.3d at 593–94. In *Okerson*, in turn, the Court of Appeals charactered *Newco*, *Hyundai*, and *Frazier* as standing for the proposition "that a party who allows or causes a case to be dismissed cannot benefit thereby." 2003 WL 22348894, at *2. *Frazier* simply addresses a set of procedural facts inapposite to the ones faced by this Court. The Hodges contend, however, that this line of cases taken as a whole counsel that "no policy reasons exist to punish Appellants by finding that the closure of the administration phase of the probate proceeding resulted in a final summary judgment against Appellants." *Docket No. 19* at 6.

Ultimately, the problem with the Hodges' argument is that it relies on a complete misstatement of the facts. The Hodges contend that they "neither caused nor allowed the probate estate to be closed." *Id.* It is true that, after approximately twenty years, the state court concluded the probate proceedings of its own accord. *See Texas Commerce Bank—Rio Grande Valley, N.A. v. Correa*, 28 S.W.3d 723, 725 (Tex.App.—Corpus Christi 2000, pet. denied) (noting that the estate was first admitted to probate in 1981). However, the notion that the Hodges did not allow this closure completely overlooks the fact that they requested that the Court of Appeals dismiss their own appeal (Cause No. 13–03–460–CV) challenging said closure. Moreover, having done so, the Hodges then neglected to appeal the hitherto interlocutory partial summary judgment that became final as a result of the appellate court's dismissal of the aforesaid appeal. In other words, the present bankruptcy appeal does very much embody a scenario in which a party who allowed a prior case to be dismissed is attempting to benefit thereby, in this case by claiming that the dismissal prevented an adverse interlocu-

tory judgment from ever becoming final. This runs contrary to both the policy concerns enunciated in *Hyundai, Newco,* and *Okerson* as well as Texas's common law rules concerning the time for appeal from interlocutory judgments.

Two additional cases from the Fifth Circuit Court of Appeals persuade this Court that the mere fact that this case's procedural history is convoluted and takes place in the context of a bankruptcy appeal provides no exception to the foregoing analysis. The decisions in *In re Hansler,* 988 F.2d 35 (5th Cir.1993) and *In re Besing,* 981 F.2d 1488 (5th Cir.1993), *cert. denied,* 510 U.S. 821, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993), both apply the doctrine of res judicata in cases involving complex procedural backgrounds. Federal bankruptcy proceedings also comprise part of the procedural complexity in each case. Taken together, these cases leave little doubt as to the applicability of the doctrine of claims preclusion in the instant case.

In *Hansler,* the Court of Appeals confronted a similarly complex procedural history. In 1985, Hansler had filed for bankruptcy under Chapter 11. 988 F.2d at 36. During the course of that proceeding, he also initiated an adversary proceeding against a lessee, which resulted in favorable interlocutory judgment on June 8, 1988. *Id.* This judgment was not made final in the district court, however, until October 23, 1991. *Id.* In the meantime, in August of 1988, Hansler had filed a state court action asserting in substance the same claims against the lessee. *Id.* at 37. Contrary to the results in the bankruptcy proceeding, the state court issued a take-nothing judgment in favor of the lessee on April 4, 1990. *Id.* The Corpus Christi Court of Appeals affirmed the state trial court's decision on March 14, 1991. *See id.* (citing *Hansler v. Mainka,* 807 S.W.2d 3 (Tex.App.—Corpus Christi 1991, no

writ)). On appeal before the Fifth Circuit, the lessee then asserted that the state judgment was the first to become final and that, therefore, the federal District Court erred in affirming the Bankruptcy Court's decision due to the doctrine of res judicata. *Id.* The Fifth Circuit agreed with the lessee, concluding that "[t]he first [final] judgment, regardless of when the suits were filed, is given preclusive effect." *Id.* at 38. On this basis, the Fifth Circuit reversed the district court and rendered a take-nothing judgment in the lessee's favor. *Id.*

In *Besing,* the procedural posture of the case was similarly convoluted. In August of 1984, Besing initiated a state lawsuit against one Hawthorne, who, in turn, asserted a counterclaim. 981 F.2d at 1490. On March 2, 1987, Besing's claims were dismissed with prejudice by the trial court, which also granted Hawthorne summary judgment shortly thereafter. *Id.* The trial court issued its final judgment disposing of the lawsuit on January 25, 1988. *Id.* The matter was appealed to the state's intermediate appellate court, and, during the pendency of this appeal, Besing filed a petition under Chapter 11 of the Bankruptcy Code. *Id.* at 1490–91. Hawthorne submitted a proof of claim in the bankruptcy proceedings that was founded on the state trial court judgment. *Id.* at 1491. In the resulting adversary proceeding before the Bankruptcy Court, Besing objected to Hawthorne's claim and brought a counterclaim consisting of "essentially the same claims as the state court had dismissed with prejudice." *Id.* Besing specifically argued that his "claims were not barred by the adverse state court judgment because it had not become final prior to the commencement of the bankruptcy proceeding." *Id.* However, this "finality argument became moot when the Texas Court of Appeals upheld the state trial court judgment." *Id.* Although there were

additional legal issues involved, the Fifth Circuit ultimately concluded that the resulting state court final judgment precluded reassertion of the same claims in the bankruptcy proceeding. *Id.* at 1493–96. Notably, the Court of Appeals observed that, "Texas law would not afford the Debtors the opportunity to reassert their contract and tort claims against Hawthorne" and that "[t]he Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court for state court proceedings." *Id.* at 1496 (internal quotation marks and brackets omitted).

There is only one relevant procedural aspect of this case that might alter the foregoing claims preclusion analysis: the bankruptcy stay. The stay of litigation pursuant to 11 U.S.C. § 362 springs into being automatically upon the filing of the debtor's petition. *In re Coho Res., Inc.,* 345 F.3d 338, 343–44 (5th Cir.2003). It halts litigation involving the debtor that is already in progress until such time as the bankruptcy proceedings are closed, dismissed, or discharge is granted or denied. 11 U.S.C. § 362(a)(1), (c)(2). The stay may otherwise be evaded only through an express order from the Bankruptcy Court. *Casperone v. Landmark Oil & Gas Corp.,* 819 F.2d 112, 114 (5th Cir.1987). If the stay remained in effect with regard to the Hodges' tortious interference claims, it may well have delayed the time for appeal in the state appellate court concerning the portion of the probate court's summary judgment denying the Hodges' tort claims that otherwise became final upon the closure of the probate estate. *See* 11 U.S.C. § 108(c)(2) (allowing parties to continue proceedings in progress within thirty days of the point at which the bankruptcy stay expires); *see, e.g., Roadside Stations, Inc. v. 7HBF, Ltd.,* 905 S.W.2d 1, 2–4 (Tex. App.—Fort Worth 1994, no writ) (discuss-

ing effect of § 108 on appellate timetable); *Raley v. Lile,* 861 S.W.2d 102, 103–05 (Tex. App.—Waco 1993, writ denied) (discussing effect of 11 U.S.C. §§ 108, 362 on appellate timetable); *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 542 (Tex.App.—Tyler, writ denied) (discussing effect of § 362 stay on appeals).

 From the record on appeal, it is clear that the Bankruptcy Court lifted the stay on May 22, 2002 with regard to the Hodges' appeal of the state probate court's summary judgment in the Debtor's favor concerning the 3/17 property interest. However, it is less clear from the record on appeal whether the stay remained in effect concerning the Hodges' tort claims, which were disposed of in the same summary judgment order concerning the 3/17 property interest. The parties have not raised or briefed this issue. Nor did the parties mention, let alone discuss, this issue during the April 5, 2004 hearing before this Court. Accordingly, the Court reluctantly holds that any issue concerning the effect of the bankruptcy stay on the finality and appealability of the state court judgment was waived for purposes of this appeal. *See, e.g., In re Hatton,* 96 Fed. Appx. 941–43 (5th Cir.2004) (unpublished opinion) ("Because Appellant failed to raise the one issue appealable to this Court, Appellant waived that issue."); *In re Pierce,* 91 Fed.Appx. 927, 929 n. 2 (5th Cir.2004) (per curiam) (unpublished opinion) ("In its brief on appeal, Elbar neither raises this issue nor argues that § 549(c) creates an exception to § 362. Therefore, this argument has been waived and will not be considered by this court."); *United States v. Hassell,* 82 Fed.Appx. 372, 374–75 (5th Cir.2003) (per curiam) (unpublished opinion) ("The Hassells assert that the automatic stay provision provided good cause for their procedural default. The Hassells offer no legal support for this proposition.

This argument is thus inadequately briefed and accordingly is waived.") (internal citation omitted).

In summary, once the relevant procedural facts of this case are sorted out, there remains no question on this record that a final state court judgment on the merits rendered by a court of competent jurisdiction in a lawsuit involving the same parties concerning the selfsame claims precludes this Court from reconsidering them on the merits in this appeal from the Bankruptcy Court. The Hodges have not cited any statutory or case law that counsels a contrary result. The Court's own inquiry into this area of the law suggests that no such authority exists, with the potential exception of an argument that has been waived.

### C. The Merits of the Hodges' Claims

The Bankruptcy Court addressed the Hodges' tort claims on the merits. Although this Court has determined that the doctrine of claims preclusion obviates any need for a decision on the merits, the Court concurs with the result reached in the bankruptcy proceedings. Accordingly, this Court also affirms the Bankruptcy Court's decision to deny the Hodges' claims on this alternative ground.

■■■ On appeal, decisions of the Bankruptcy Court are subject to review for clear error where issues of fact are concerned and *de novo* review where issues of law or mixed issues of law and fact are concerned. *In re CPDC, Inc.*, 337 F.3d 436, 440–41 (5th Cir.2003). In the bankruptcy proceedings below, the Hodges filed proofs of claim, which constitute "prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f). However, the Debtor properly objected to these claims, which required the Hodges to prove up their claims by a preponderance of the evidence in the

Bankruptcy Court. *In re O'Connor*, 153 F.3d 258, 260 (5th Cir.1998); *In re Jobs. com, Inc.*, 283 B.R. 209, 213 (Bankr. N.D.Tex.2002).

■■■ The Hodges' claims of tortious interference with contractual rights and inheritance stem from the Debtor's participation in litigation in the probate (and other) proceedings. The Bankruptcy Court rejected these claims. In its amended Findings of Fact and Conclusions of Law, the Bankruptcy Court determined that:

26. Each of the Hodge–Doss proofs of claim (a total of seven) seek damage for "personal injuries" totaling $300,000.00, each. The claims do not (i) make a claim to title to the Dove Street property; or (ii) assert any right as a representative of the Shwery Estate.

In their response to Debtor's objections to claims (all virtually identical, except as to identity of claimant), the claimants allege that "Debtor and Ramon Garcia have deliberately interfered with Claimant's contractual and inheritance rights under Texas law." Claimants incorporate by reference their petition and the summary judgment order from the underlying state court suit, granting summary judgment in favor of Debtor, South Texas Wildhorse Desert Investments, as to title as claimed by the Estate's putative administrator, and as to all actions in tort as claimed by the Hodge–Doss claimants. Nowhere do claimants allege specific facts that would form the basis for any recovery against the Debtor. Evidence at trial before this Court on Objections to Claim is equally devoid of facts.

27. Claimants have failed to prove a right to any contractual benefits or inheritance rights to which Debtor, or Ramon Garcia, could have interfered.

28. Claimants have failed to prove any interference by Ramon Garcia, or Debtor, with any of its contracts and with any inheritance rights.

29. Claimants have failed to prove any damages suffered by any specific claimant. They allege a specific expenditure of $8,000.00 paid to the administrator for him to pursue claims on behalf of the Estate. Those are the claims to title to the Dove Street property, which claims the Administrator has lost in every forum. There is a general allegation that Debtor's litigation against the Estate has cost it $150,000.00, but no attempt to define or segregate those expenditures to show a connection to actions brought by Debtor, versus actions brought by TCB against the Estate and Debtor. Testimony by Correa [the Administrator], when called as a witness by the Hodge–Doss claimants, failed to support the claim that litigation involving the Debtor rose to a level of tortious misconduct. Correa testified that all litigation was necessary, and was non-vexatious, and that the Shwery Estate never asserted such claims. There are no other factual allegations made by claimants against Debtor, and there was direct testimony by claimants that there is no other wrongdoing claimed.

30. Litigation brought by Debtor was, in fact, in proper pursuit of its rightful ownership claim to the Dove Street property, or in rightful defense and protection thereof.

\* \* \* \* \* \*

34. Claimants, having the burden to establish the validity of their claim, had the burden to prove tortious interference with contractual rights and/or tortious interference with inheritance rights. Claimants had the further burden to prove the nature and extent of their damages. Claimants failed to prove any tortious behavior. Claimants failed to prove any specific damages, suffered individually or authorized by law. Claimants failed to meet the burden of establishing a claim.

A careful review of the transcript of the May 21, 2003 hearing during which the Hodges' tort claims were tried before the Bankruptcy Court, as well as the remainder of the record on appeal, reveals no cause for reversal of Judge Schmidt's decision. As during the hearing, the Hodges have failed to assert their claims with any specificity. Instead, they largely rely on sweeping and conclusory citations of the record in support of their very general claims of tortious interference. *See, e.g., Docket No. 6* at 26 ("The proffered testimony of Correa and Exhibits H–6, H–7, H–9 through H–47 established multiple willful and intentional acts of interference on the part of the Debtor."); *id.* at 28 (citing "Exhibits H–6, H–7, H–9 through H–50" for a similar proposition); *Docket No. 21* at 5 (urging "that the Court review the record and briefs on file"). Having reviewed the evidence in the record, there is no clear error in Judge Schmidt's factual determinations.

The only potential for clear error concerns the inclusion of the references to Ramon Garcia in the foregoing Findings of Fact and Conclusions of Law. The Hodges have complained that the Bankruptcy Court's findings improperly determine the validity of their tort claims with reference to Garcia in his individual capacity. *Docket No. 6* at 18–19. This Court, however, does not read Judge Schmidt's findings in this fashion. Ramon Garcia's name is mentioned solely because he is the sole shareholder of the Debtor and the sole agent through whom the Debtor corporation is alleged to have acted. As established during the July 23, 2003 hearing, Garcia was not a party in the bankruptcy proceedings below. Although the decision of the Bankruptcy Court *may* have impli-

cations for any future litigation against Garcia depending on how that litigation is framed, *see Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 870 (5th Cir. 1984) (discussing res judicata as it applied to major shareholder of corporation), the Bankruptcy Court's decision below is *not* an adjudication of the Hodges' tort claims against Garcia as an individual. As previously noted, *see supra* note 7, neither is this issue before this Court on appeal.

Having reviewed *de novo* the Hodges' legal theories in conjunction with the evidence at trial, it is likewise clear that the Bankruptcy Court committed no legal error sufficient to warrant reversal of its decision. Liability for tortious interference with contractual and inheritance rights does not exist when the alleged tortfeasor's conduct was engaged in pursuant to a legal right, even if the elements of the torts are otherwise satisfied. *See, e.g., C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 790 (Tex.App.—Houston [1st Dist.] 2004, no pet.); *see also Beathard Joint Venture v. W. Houston Airport Corp.*, 72 S.W.3d 426, 434 (Tex.App.—Texarkana 2002, no pet.) (noting that such a defense may be predicated on "(1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that

claim ultimately proves to be mistaken"). Such a defense is established as a matter of law when it is determined that the alleged tortfeasor's supposedly tortious acts were merely carried out in the exercise of its own rights. *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 857 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).[11]

In light of the foregoing legal principles, the Hodges' claims are simply without merit. The record leaves little doubt that the Debtor's conduct in the probate proceedings (and elsewhere) was related to an assertion of its own legal rights (*viz.*, its asserted 3/17 interest in the aforementioned parcel of property). On cross-examination, the administrator of the estate testified that "a large part" of the litigation he has engaged in concerned ownership of the parcel of property at issue. He also declined to characterize the Debtor's conduct as unfounded and conceded that there "were fact and legal issues" to be decided where its filings were concerned. In the probate court, these issues were decided in favor of the Debtor as far as ownership of the 3/17 interest is concerned. Ultimately, the Hodges dismissed their own appeal of this very matter. Under these circumstances, the Hodges cannot prevail on

---

11. All of the cases cited above concern tortious interference with contracts. Whether tortious interference with inheritance rights *even existed* as an independent tort in Texas was apparently subject to dispute not too long ago. *See King v. Acker*, 725 S.W.2d 750, 754 (Tex.App.—Houston [1st Dist.] 1987, no writ) (observing that "Texas seems to recognize a cause of action for tortious interference" and holding that such a cause of action does exist where inheritance rights are concerned); *cf. Neill v. Yett*, 746 S.W.2d 32, 35 (Tex.App.— Austin 1988, writ denied) (questioning whether such a cause of action exists with regard to an inheritance expectancy). Notwithstanding *King's* recognition of the tort, there was not another reported case on the subject until 1998. *Brandes v. Rice Trust, Inc.*, 966 S.W.2d 144, 146–47 (Tex.App.—Houston [14th Dist.]

1998, pet. denied). Accordingly, there is little in the way of case law to which this Court may cite with regard to this specific cause of action. Nonetheless, the Court is confident that the foregoing cases concerning tortious interference with contractual rights are equally applicable in the context of interference with inheritance rights. In recognizing the latter tort, the *King* court cited *Tippett v. Hart*, 497 S.W.2d 606 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). The *Tippett* court, in turn, contemplated suits for interference solely when that interference could be said to have been "without justifiable cause on the part of the actor" or "without just cause or excuse" 497 S.W.2d at 609 (internal quotation marks omitted). The assertion of non-frivolous legal rights in litigation doubtless constitutes justifiable cause.

their tort claims as a matter of law. Accordingly, this Court affirms the Bankruptcy Court's denial of the Hodges' tort claims and affirms its confirmation of the Debtor's plan.

## III. CONCLUSION

Although this Court does possess jurisdiction in this case, it is confronted with a final state court judgment that has definitively resolved the tortious interference claims advanced by the Hodges in the Debtor's favor. In the alternative, the Bankruptcy Court properly denied the Hodges' claims. Accordingly, the Court **DENIES** the Debtor's Motion to Dismiss Appeal From Order Confirming Plan of Reorganization, but **AFFIRMS** the Bankruptcy Court's denial of the Hodges' claims and **DENIES** the relief sought by the Hodges' in their appeal concerning the same. In addition, the Court also **DENIES** all other pending motions as being moot.