

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00382-CV

_____

KYLE AND DALA COWDEN, Appellants

V.

MARKUS HENDERSON AND SCHAWANDA HENDERSON, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 19-3925-462

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

1

## MEMORANDUM OPINION

Appellants Kyle and Dala Cowden appeal from the trial court's judgment, based upon a jury verdict, in favor of Appellees Markus and Schawanda Henderson. The trial court's judgment orders that the Cowdens take nothing on their claims against the Hendersons and awards damages to the Hendersons on their claims for intentional nuisance and intentional interference with contracts and also awards the Hendersons attorney's fees. In four issues, the Cowdens argue that there was no evidence to support the submission of Questions 10–25 to the jury, that the award of attorney's fees to the Hendersons was improper, and that the jury's answer to Question 1 was against the great weight and preponderance of the evidence. We affirm.

## I. BACKGROUND

### A. FACTS

The Cowdens purchased Lot 31 in the Roanoke Hills Addition on August 15, 1986. The Hendersons purchased Lots 27, 28, and 29[1] in the Roanoke Hills Addition on July 18, 2016. There is no Lot 30 in the Roanoke Hills Addition, so Lots 29 and 31 are adjacent to one another. This case involves a portion of land referred to as the "disputed property" between Lots 29 and 31. The "disputed property" was defined as "a triangular section of [Lot 29] . . . beginning at the northwest corner of Lot 31 and

---

[1]After the purchase, the Hendersons obtained a replatting of Lots 28 and 29, which are now named and referred to as Lot 28R. Because the dispute involves a portion of land between the original Lot 29 and Lot 31, we will refer to the lot in dispute as Lot 29 in this opinion.

2

running diagonally across [Lot 29] to the northeast corner of Lot 5 and the south boundary of [Lot 29]."

Kyle Cowden testified at trial that before purchasing Lot 31, he walked the property and had an impression of where the boundary between Lots 29 and 31 was located. At closing, the Cowdens received a survey of the property, which was not filed of record, that he relies on to show that the disputed property is part of Lot 31. Kyle acknowledged that the 1961 plat of the Roanoke Hills Addition, which was filed of record, shows a different boundary between Lots 29 and 31 than that is shown on his survey.

There was a house and a garage on the Cowdens' property at the time of purchase. Kyle believed his property extended six feet from the corner of his garage and allowed him to walk around and maintain his garage. Kyle stated that before the Hendersons purchased their lots, the Cowdens put a swing set on the disputed property that was grounded with concrete and remained on the property for approximately twenty years. According to Kyle, they also put an above-ground swimming pool on the disputed property that remained there for at least a year. Kyle said that he mowed and maintained the disputed property and that no one else mowed it or questioned his use of it.

Maribeth Furr testified at trial that her father purchased Lots 27, 28, and 29 in 1972. After her father's death, Furr eventually became the sole owner of the lots in 1991, and she owned the lots until she sold them to the Hendersons. Furr refuted

3

Kyle's testimony that he mowed and maintained the disputed property. Furr said that she would have noticed if the Cowdens mowed and maintained any portion of Lot 29. Furr stated that she was familiar with the property lines for Lot 29 and that she had not seen a swing set or any other personal property on the lot.

Markus Henderson testified at trial that he walked the property before purchasing the three lots and that he was familiar with the property lines. The Hendersons obtained a survey before purchasing the lots, and Markus did not have any concerns over the property lines.

Markus began clearing the property himself in December 2016 to build a home. Markus testified that his first encounter with Kyle occurred when Kyle approached him as he was clearing the property and told him to stop because there was a "boundary dispute." Markus was unaware of a boundary dispute, but after Kyle informed him of the dispute, the parties took three months to resolve it. For that three-month time period, Markus stopped working on the construction of the Hendersons' home. Markus believed the "boundary dispute" was resolved in March 2017 and resumed working on clearing the property and constructing their home. From March 2017 until September 2019, the Cowdens and the Hendersons had no issues with the boundary.

Markus and Schawanda acted as their own general contractors in the construction of their home. Markus testified that during the three-month delay, they suffered damages as a result of the Cowdens' claim to the property. Markus detailed

4

those damages caused by price increases during the delay. The Hendersons introduced an exhibit summarizing all of the damages that totaled $38,002.38.

Markus testified that he had a septic system installed on Lot 29 and that part of the system is on the disputed property. The Cowdens did not attempt to prevent the installation. Markus told the jury that the Cowdens' trash and shingles on the Hendersons' property interferes with the Hendersons' use and enjoyment of their property. Markus stated that Kyle has come onto the Hendersons' property without permission on multiple occasions. According to Markus, Schawanda is afraid to go outside because of Kyle's actions.

Schawanda testified that she never saw the Cowdens on any part of Lot 29 before she and Markus purchased it and that she did not see any evidence that the Cowdens were maintaining any portion of the property. Schawanda said that the Cowdens' garage, which is close to the property line dividing Lots 29 and 31, is in disrepair and is an eyesore.

Schawanda's testimony tracked Markus's testimony that they had to stop working on their house because of the "boundary dispute" but that they thought the dispute was resolved in March 2017. Schawanda had an encounter with Kyle when he tried to stop the soil testers from completing their work. The Hendersons completed construction of their home and moved into the home in March 2018. Schwanda said that she is afraid of Kyle and that he causes her anxiety.

5

## B. Procedure

On April 30, 2019, the Cowdens filed a trespass to try title suit against the Hendersons. The Hendersons answered with a plea of not guilty and a general denial. The Hendersons also made a demand for an abstract of title. On October 21, 2019, the Hendersons filed a counterclaim and an application for a temporary injunction, and then they amended that pleading on July 15, 2022. In the amended counterclaim, the Hendersons alleged causes of action for trespass to real property, tortious interference with contract, and private nuisance. The Hendersons also requested a declaratory judgment concerning title to the disputed property.

The Hendersons filed a no-evidence motion for summary judgment as to all of the Cowdens' claims. The motion argued that:

> There is no evidence that [the] Cowdens ever paid any taxes on the Disputed Property.

> There is no evidence that [the] Cowdens claim any of the Disputed Property under a duly registered deed.

> There is no evidence that the Cowdens held or now hold any of the Disputed Property under a deed or other instrument purporting to convey any or all of the Disputed Property that is recorded in the deed records of Denton County, Texas.

> There is no evidence that any predecessor deed to [the] Cowdens' Lot 31 deed included any of the Disputed Property.

> There is no evidence that the Cowdens' claimed use, cultivation and enjoyment of the Disputed Property was consistent and continuous for the entirety of the five, ten or twenty-five years prescribed by law.

6

There is no evidence that the Cowdens maintained continuous possession of the Disputed Property for the five, ten or twenty-five years prescribed by law.

There is no evidence that [the] Cowdens' claimed use and/or possession of the Disputed Property was continuously inconsistent with and hostile to the recorded title holders for the five, ten or twenty-five years prescribed by law.

There is no evidence that [the] Cowdens' claimed use and/or possession of the Disputed Property was continuously unmistakable to the recorded title holders for the five, ten or twenty-five years prescribed by law.

There is no evidence that [the] Cowdens' claimed use and/or possession of the Disputed Property was continuously exclusive against the recorded title holders for the five, ten or twenty-five years prescribed by law.

There is no evidence that [the] Cowdens' claimed use and/or possession of the Disputed Property was continuously visible to the recorded title holders for the five, ten or twenty-five years prescribed by law.

There is no evidence that [the] Cowdens' claimed use and/or possession of the Disputed Property was continuously open and notorious to the record title holders for the five, ten or twenty-five years prescribed by law.

The Cowdens responded to the motion for summary judgment asserting title based upon adverse possession under the five, ten, and twenty-five year statutes of limitations set out in the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac & Rem. Code §§ 16.025–.027. The trial court granted the Hendersons' motion for summary judgment as to the adverse possession claim pursuant to Section 16.025—the five-year limitations period. *See id.* § 16.025. The trial court denied the motion for summary judgment as to the ten-and twenty-five-year adverse possession claims.

The case proceeded to a jury trial. The jury found as follows:

7

QUESTION 1:

Did Kyle and Dala Cowden hold the Disputed Property in peaceable and adverse possession for a period of at least 10 years before April 19, 2019?

ANSWER: No

QUESTION 2:

Did Kyle Cowden trespass on Markus and Schawanda Henderson's property?

ANSWER: Yes

QUESTION 3:

(a) What dollar amount, if any, should be awarded to Markus and Schawanda Henderson for the intrinsic value of their damaged property, that is, the ornamental and utilitarian value of their property?

ANSWER: $0

(b) What dollar amount, if any, should be awarded for the reasonable and necessary costs to compensate Markus and Schawanda Henderson for their loss of use of the property that was sustained in the past?

ANSWER $0

QUESTION 4:

What sum of money, if paid now in cash, would fairly and reasonably compensate Schawanda Henderson for the damages, if any, resulting from the trespass?

. . . .

ANSWER: $0

QUESTION 5:

8

What sum of money, if paid now in cash, would fairly and reasonably compensate Markus Henderson for the damages, if any, resulting from the trespass?

. . . .

ANSWER: $0

QUESTION 6:

Do you find by clear and convincing evidence that Kyle Cowden's trespass was committed with malice?

. . . .

ANSWER: No

The jury was instructed not to answer Question 7 if they answered "no" to Question 6.

The jury answered the remaining questions as follows:

QUESTION 8:

(a) Did Kyle Cowden or Dala Cowden intentionally create a private nuisance?

. . . .

ANSWER: Yes

(b) Did Kyle Cowden or Dala Cowden negligently create a private nuisance?

. . . .

ANSWER: Yes

QUESTION 9:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Shawanda Henderson for the damages, if any, that resulted from the nuisance caused by Kyle Cowden or Dala Cowden?

. . . .

ANSWER: $12,000.

QUESTION 10:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Henson Lumber?

. . . .

ANSWER: Yes

QUESTION 11:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Henson Lumber?

ANSWER: $2,500.81

QUESTION 12:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Pennington Concrete?

. . . .

ANSWER: Yes

QUESTION 13:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their

damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Pennington Concrete?

ANSWER: $13,243.45

QUESTION 14:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Fort Worth Sash and Door?

. . . .

ANSWER: Yes

QUESTION 15:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Fort Worth Sash and Door?

ANSWER: $3,463.23

QUESTION 16:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Acme Brick?

. . . .

ANSWER: Yes

QUESTION 17:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Acme Brick?

ANSWER: $3,630.58

QUESTION 18:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Cabinets by Michael, Inc.?

. . . .

ANSWER:  Yes

QUESTION 19:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Cabinets by Michael, Inc.?

ANSWER:  $3,150.00

QUESTION 20:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and MG Brick & Stone, LLC?

. . . .

ANSWER:  Yes

QUESTION 21:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and MG Brick & Stone, LLC?

ANSWER:  $0

QUESTION 22:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Allen Construction?

. . . .

ANSWER:  Yes

QUESTION 23:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Allen Construction?

ANSWER:  $2,193.56

QUESTION 24:

Did Kyle Cowden intentionally interfere with a contract between the Hendersons and Lifetime Fence Company?

. . . .

ANSWER:  Yes

QUESTION 25:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Markus and Schawanda Henderson for their damages, if any, that resulted from Kyle Cowden[]'s interference with a contract between the Hendersons and Lifetime Fence Company?

ANSWER:  $4,684.35

The Cowdens filed a Motion for Judgment Notwithstanding the Verdict, but the trial court signed the Final Judgment according to the jury's verdict.[2]  The trial court's

---

[2]The jury awarded the Hendersons $12,000 as damages for their claim for intentional nuisance, and the trial court's judgment was in accordance with the jury's award.  The Cowdens do not challenge the jury's finding on appeal or the trial court's judgment awarding the Henderson's $12,000 for intentional nuisance.

judgment awarded the Hendersons' $27,790 in attorney's fees. The Cowdens also filed a Motion to Modify the Judgment and a Motion for New Trial. The trial court denied the Motion to Modify the Judgment, and the Motion for New Trial was denied by operation of law. This appeal followed.

## II. TORTIOUS INTERFERENCE WITH CONTRACTS

In the first two issues, the Cowdens argue that there was no evidence to support the submission of Questions 10–25 concerning tortious interference with contracts to the jury and that there was no evidence to support the jury's affirmative answers to Questions 10, 12, 14, 16, 18, 20, 22, and 24.

### A. STANDARD OF REVIEW

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof, he must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). We may sustain a legal sufficiency challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether legally sufficient evidence supports the finding under

14

review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018) (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins.*, 77 S.W.3d 253, 262 (Tex. 2002); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

Because a court is required to submit to the jury requested questions that are supported by the pleadings and any evidence, the contention that the court should not have submitted the complained of questions is subsumed within the contention that the evidence is legally insufficient to support the jury's answers to those questions. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992) (explaining that trial courts are required to submit requested questions to the jury if pleadings and any evidence support them); Tex. R. Civ. P. 278 (providing that court shall submit questions raised by pleadings and

evidence); *J. Michael Ferguson, P.C. v. Ghrist L. Firm, PLLC,* No. 02-18-00332-CV, 2021 WL 2006321, at *13 (Tex. App.—Fort Worth May 20, 2021, pet. denied) (mem. op.).

## B. APPLICABLE LAW

To prove a claim for tortious interference with a contract, a plaintiff must establish (1) the existence of a valid contract subject to interference, (2) that the defendant willfully and intentionally interfered with the contract, (3) that the interference proximately caused the plaintiff's injury, and (4) that the plaintiff incurred actual damages or loss. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). To prove the requisite element of intent, the plaintiff must show either (1) that the interfering party had actual knowledge of the existence of the contract and of the plaintiff's interest in it, or (2) that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract and the plaintiff's interest in it. *Reg'l Specialty Clinic, P.A. v. S.A. Randle & Assocs., P.C.*, 625 S.W.3d 895, 903 n.6 (Tex. App.—Houston [14th Dist.] 2021, no pet.). "Intentional interference does not require intent to injure, only that 'the actor desires to cause the consequence of his act, or that he believes that the consequences are substantially certain to result from it.'" *Hansen*, 525 S.W.3d at 689 (quoting *Sw. Bell Tel. Co. v. John Carlo Tex.*, 843 S.W.3d 470, 472 (Tex. 1992)).

16

**C. Discussion**

The Cowdens first argue that there is no evidence of valid contracts in existence at the time of the alleged interference. They contend that the evidence showed only that the Hendersons had received estimates or bids from the vendors and that there was nothing to show acceptance of those bids.

A valid contract consists of (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Markus testified that construction delays occurred between January 2017 and March 2017 because of the Cowdens' claim to the disputed property and described the cost differences the Hendersons incurred with the vendors. The Hendersons introduced as exhibits the pre-delay proposals and the post-delay invoices from vendors that reflected the cost differences. The Hendersons also introduced an exhibit that summarized all of the damages they claimed to suffer as a result of the construction delays. That summary detailed the original price quote versus the actual cost for the services after the delay and provided a figure for the cost difference. On cross-examination, the Cowdens' attorney asked Markus if he had a contract with the various vendors, and Markus responded that he considered the quotes as a contract.

We must uphold the jury verdict if any reasonable version of the evidence supports it. *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018). On cross-examination, Markus testified as to each of the pre-delay exhibits and stated he considered the quotes to be a contract. Markus's testimony that he had contracts with the vendors and the Hendersons' exhibits provided some evidence that there were valid contracts between the Hendersons and the vendors.

The Cowdens next argue that there is no evidence that Kyle willfully and intentionally interfered with the contracts because there is no evidence he had knowledge of the existence of the contracts with the vendors. We agree there is no evidence to show that Cowden had actual knowledge of a valid contract between the Hendersons and Henson Lumber, Pennington Concrete, Fort Worth Sash and Door, Acme Brick, Cabinets by Michael, MG Brick & Stone, Allen Construction, and Lifetime Fence Company. However, the Hendersons could also prove that Kyle willfully and intentionally interfered with the contracts by showing he had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence of the contract and the Hendersons' interest in it. *See Reg'l Specialty Clinic,* 625 S.W.3d at 903 n.6.

The evidence shows that the Hendersons started the construction process on their home and that they stopped that process after receiving notice that there was a boundary dispute with the Cowdens. Some evidence demonstrates that Kyle knew the Hendersons were constructing a home and took legal action to prevent further

18

construction. More than a scintilla of evidence exists when reasonable and fair-minded people could reach different conclusions based on the evidence. *Anderson*, 550 S.W.3d at 616. A reasonable person could have believed that the Hendersons had existing contracts for the construction of their home at the time of the delay. Intentional interference with contracts includes committing "acts which make performance more burdensome, difficult or impossible." *Tippet v. Hart*, 497 S.W.2d 606, 610 (Tex. App.—Amarillo 1973) (quoting 86 C.J.S. Torts § 44), *writ ref'd n.r.e.*, 501 S.W.2d 874 (Tex. 1973). The jury heard evidence that the construction delays were caused by the Cowdens' claim of a boundary dispute.

We hold that more than a scintilla of evidence supports the jury's findings on questions 10, 12, 14, 16, 18, 20, 22, and 24 that Kyle intentionally interfered with the Hendersons' contracts with the vendors. *See Anderson*, 550 S.W.3d at 616.

The Cowdens argue in the second issue that because it was error to submit questions 10, 12, 14, 16, 18, 20, 22, and 24 to the jury and because there was no evidence to support the jury's affirmative findings on those questions, it was also error to submit questions 11, 13, 15, 17, 19, 21, 23, and 25 on damages to the jury. Because we hold that some evidence supports the jury's findings that Kyle tortiously interfered with the Hendersons' contracts with the vendors, we further hold that the trial court did not err in submitting the related questions on damages as a result of that interference. The jury's award of damages is supported by the Hendersons' exhibit summarizing the damages resulting from the delay. The Cowdens do not challenge the amount of

19

damages awarded based on the interference with each vendor. We overrule the Cowdens' first and second issues.

## III. ATTORNEY'S FEES

In their third issue, the Cowdens argue that the trial court erred in awarding attorney's fees to the Hendersons pursuant to sections 16.034 and/or 37.004(c) and 37.009 of the Texas Civil Practice and Remedies Code.

In their counter petition, the Hendersons stated that the dispute between the parties was a boundary dispute. They requested a declaratory judgment concerning title to the disputed property and the trial court's determination of the proper boundary between the adjoining properties. The Hendersons sought attorney's fees pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code.

Section 37.004 provides:

> (a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.
>
> . . .
>
> (c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.

20

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a), (c). Section 37.009 allows the trial court to award attorney's fees for any proceeding under Chapter 37. *Id.* § 37.009.

The Cowdens state that a declaratory judgment action would only be authorized under Section 37.004(c) if the sole issue concerning title to real property would be the determination of the proper boundary line between the adjoining properties. They contend that absent a boundary dispute, no Section 37.004(c) declaratory judgment action would be available; thus, no attorney's fees would be recoverable under Section 37.009.

The Cowdens argue that their dispute with the Hendersons is not a boundary dispute but rather only concerns adverse possession. Thus, they argue that Section 37.004(c) is not applicable. We disagree.

The Cowdens cite *Lile v. Smith* in support of their argument. 291 S.W.3d 75 (Tex. App.—Texarkana 2009, no pet.). In *Lile*, the court considered whether the case before it was a boundary dispute or whether it was a suit to determine title. *Id.* at 77. The court stated that the test for determining whether the case is a boundary dispute is to determine if the "heart of the controversy is to determine a boundary or whether its true aim is to determine title to the land." *Id.* at 78. The *Lile* court stated that the issue was not one of the location of a boundary but was the determination of title to a well-defined parcel of land. *Id.* The Cowdens argue that as in *Lile*, there is no indication this case arose from the dispute over the location of a boundary.

Unlike the evidence in *Lile*, the evidence in this case shows that the dispute arose over the location of a boundary between the Cowdens' Lot 31 and the Hendersons' Lot 29. Kyle testified that before buying Lot 31, he walked the boundaries of the property and had an impression of where the boundary was located. He obtained a survey of the property and believed he owned the property six feet from his garage, which included the disputed property. Markus also walked the boundaries of his property and had an impression of where the boundary was located. The Cowdens' and Hendersons' impressions of the boundary between the two properties were in conflict. On their first encounter, Kyle told Markus to stop clearing the land because there was a "boundary dispute." In contrast to *Lile*, the heart of this controversy was to determine the boundary between Lot 29 and Lot 31. *See id.* at 78.

Section 37.004(c) specifically allows the Hendersons to litigate the boundary dispute as a declaratory judgment action. *Id.* Therefore, we hold that the trial court did not err in awarding attorney's fees pursuant to Sections 37.004(c) and 37.009. We overrule the third issue.

## IV. ADVERSE POSSESSION

In their fourth issue, the Cowdens argue that the jury's finding that they did not hold the disputed property in peaceable and adverse possession for a period of at least ten years before April 30, 2019, is against the great weight and preponderance of the evidence.

22

## A. STANDARD OF REVIEW

When a party attacks the factual sufficiency of the evidence on an adverse finding on which he has the burden of proof, that party must show that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

## B. APPLICABLE LAW

Section 16.026(a) of the Texas Civil Practice and Remedies Code provides that a "person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code Ann. §16.026(a). To prevail on a claim of adverse possession under section 16.026(a), the elements to prove are: (1) actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) that involves continuous cultivation,

23

use, or enjoyment for ten years. *Glover v. Union Pac. R.R. Co.*, 187 S.W.3d 201, 213 (Tex. App.—Texarkana 2006, pet. denied) (citing *Nat. Gas Pipeline Co. v. Pool,* 124 S.W.3d 188, 193–94 (Tex. 2003)); *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Additionally, the party claiming title by virtue of adverse possession has the burden of proving a description of the property adversely possessed. *Perkins v. McGehee*, 133 S.W.3d 287, 291 (Tex. App.— Fort Worth 2004, no pet.).

## C. DISCUSSION

To prove their claim of adverse possession for a period of at least ten years, the Cowdens point to the evidence that they purchased Lot 31 in 1986 and from that time until the Hendersons purchased the adjoining lot in 2016, they maintained and mowed the disputed property without interruption. They claim that they installed a swing set on the disputed property and had a trampoline and an above-ground swimming pool on the disputed property, and they were all visible and hostile to the claims of others. The Cowdens offered the testimony of a neighbor who said he observed the Cowdens use and maintain the disputed property for at least ten years.

The Hendersons counter that the Cowdens did not provide any evidence that the prior owner of Lot 29, Maribeth Furr, had notice of the hostile claim. The use of the land "must constitute an actual and visible appropriation of the land such that the true owner is given notice of a hostile claim." *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex. App.—Eastland 2004, pet. denied) (quoting *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990)). Furr testified that she mowed Lot 29 and that no portion of that lot was mowed

24

by anyone else. Furr further stated that she would have noticed if the Cowdens mowed a portion of Lot 29. Furr never saw a swing set or any other personal property on Lot 29.

The Hendersons also contend that the Cowdens did not provide any photographs as evidence of their claimed use of the disputed property. The jury viewed the photographs provided by the Cowdens and were able to determine if they provided evidence of their claimed use. The jury heard evidence that the Cowdens did not install a fence on the disputed property or take any action to prevent the true owners from using the disputed property. The Hendersons provided evidence to dispute the Cowdens' claim that the adverse possession was actual, visible, and hostile to the claim of the record owner. *See Harlow,* 132 S.W.3d at 646.

When conducting a factual-sufficiency review, we must not merely substitute our judgment for that of the fact-finder. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The fact-finder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.* We hold that the jury's finding that the Cowdens did not adversely possess the disputed property for a period of ten years is not so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *See Pool,* 715 S.W.2d at 635. We overrule the Cowdens fourth issue.

25

## V. CONCLUSION

Having overruled all of the Cowdens issues on appeal, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  June 6, 2024